## HINKEL v. MOTTER, Internal Revenue Collector.

No. 1105.

District Court, D. Kansas, Second Division.

Jan. 29, 1930.

Yankey, Gleason & Cox, of Wichita, Kan., for plaintiff.

Al F. Williams, U. S. Atty., and Alton H. Skinner, Asst. U. S. Atty., both of Topeka, Kan., for defendant.

POLLOCK, District Judge.

This is an action at law brought by plaintiff to recover from defendant the sum of $24,453.35 paid under protest and collected from plaintiff as income tax for the year 1926. The tax was paid on October 8, 1928. The parties have waived a jury, and the case has heretofore been tried before the court and now stands submitted for decision.

The basis for the tax so assessed is this: At the southeast corner of Main street and Douglas avenue in the city of Wichita, this state, is a building occupied by what is known as the Boston Store. This building was constructed some twenty years before the tax was laid on the plaintiff. The entire building so occupied is 90 feet front on Douglas avenue and 150 feet depth on Main street. The property which was leased and for years had been occupied by the Boston Store as a unit belonged to owners. That is to say, for many years a corporation known as the Emporium Building Company (hereinafter called the "Building Company") owned a frontage of 34 feet on Douglas avenue, and prior to the year 1926 another party, the Western Investment Company, owned the remaining frontage of 56 feet on Douglas avenue. In the year 1923 it appears the Boston Store had leased the building from the owners, and the plaintiff at that time owned 47½ per cent. of the capital stock of the Building Company. As the Boston Store wished to continue in its present location, and as the ten-year lease under which it was holding from the Building Company would soon expire and the plaintiff anticipated trouble in the making of a renewal of the lease from the Building Company, in the years from 1923 to 1926, through brokers, it purchased stock of the Building Company and continued to do so until his holdings reached 901 shares out of the entire issue of 1,200 shares. A meeting of the stockholders in the Building Company was called for February 18, 1926, at which meeting a give or take proposition was made between the holders of the 299 shares to either give plaintiff $200 per share for his stock or to take that amount for their shares in the Building Company. As the plaintiff desired the property as a place to conduct his store, he agreed to purchase the entire minority interest of 299 shares in the Building Company at the price of $200 per share, which he did, and thereupon he caused the corporation to be dissolved and to remain the sole owner of the 34 feet frontage of the Building Company.

It is thus seen the purchase by plaintiff of this part of the building was not a transaction opened and closed in the year 1926, but was one which was concluded merely in that year. The entire stock of the Building Company cost plaintiff $221,105.14, and at this sum the plaintiff estimated the value of the building when making his income tax return for the year 1926. In other words, he estimated the value of the building to be what it had cost him to purchase the entire capital shares of the Building Company. With this return the Collector of Internal Revenue and his agents did not agree, but they appraised the value of the building so purchased as of February 18, 1926, the date on which plaintiff purchased the remainder of the shares in the Building Company, to be $329,154.88, or some $109,154.88 more than the Building Company stockholders had received for their shares. Hence, the tax on this profit so ascertained was added to plaintiff's taxable income for the year 1926.

█ I am of the opinion from the business of the Building Company, which was solely the ownership and renting of this part of the building purchased by the plaintiff, that the shares of stock therein purchased on the market in the year 1926 was the best evidence found in this record of the value of the property involved at that date. As there were issued and outstanding 1,200 shares, and the value of the shares as of February 18, 1926, the date the 299 shares were sold under the proposition to give or take, that sum is the very best and highest evidence of the cash value of the property on that date. That, of course, would make the entire value of the property, if it had been acquired on that date, $240,000. The sellers of this stock were business men, acquainted with the value of the property, engaged in a bona fide actual sale or exchange of valuable property rights for cash money. What the 901 shares theretofore purchased by plaintiff cost plaintiff per share is not shown. What this stock was worth when purchased does not appear from the record. It must be presumed they were purchased at their then actual cash value. Opinions as to the value of property are so easily formed and so cheerfully expressed in this life, and if any wrong comes from such expert opinions expressed does not harm the expert himself but another, long experience has taught those finding from evidence the actual cash value of property to rely more

largely upon the judgment of he who furnishes cash for the purchase of property, or he who accepts it for his property in a bona fide bargain and sale, than upon expert evidence as to its value, as cash transactions are, as a usual thing, the very best standard of value. This manner of determining the actual value is not only the one consonant with reason, but the one adopted by the Treasury Department of the government in ascertaining the value of property in assessing income taxes thereon.

Article 207 of Regulation 69 provides: "Where the fair market value of the property at a specified date is the basis for depletion and depreciation deductions, such value must be determined, subject to approval or revision by the Commissioner, by the owner of property in the light of the conditions and circumstances known at that date, regardless of later discoveries or developments in the property or subsequent improvements in methods of extraction and treatment of the oil and gas product. The value sought should be that established assuming a transfer between a willing seller and a willing buyer as of that particular date. The Commissioner will give due weight and consideration to any and all factors and evidence having a bearing on the market value, such as cost, actual sales and transfers of similar properties, market value of stock or shares, royalties and rentals, value fixed by the owner for purpose of the capital stock tax, valuation for local or State taxation, partnership accountings, records of litigation in which the value of the property was in question, the amount at which the property may have been inventoried in probate court, and, in the absence of better evidence, disinterested appraisals by approved methods. Where the fair market value must be ascertained as of a certain date, analytic appraisal methods, such as the present value method, will not be used if the fair market value can reasonably be determined by any other method." United States v. Garbutt (C. C. A.) 35 F.(2d) 924, 926.

However, I am not of the opinion, under the facts of this case and the manner in which the property was acquired by the plaintiff, profit or gain was made by plaintiff on February 18, 1926, the date on which he was required to return and pay an increased income tax for that year, and for many reasons. The Building Company was merely the medium through which the title came to plaintiff as an individual owning all of the corporate shares of the Building Company. The corporation being theretofore the owner of the building, plaintiff could have carried the property in the name of the corporation with the same effect and to like purpose as by dissolving the corporation after conveyance to himself. This was a mere formal act which brought the plaintiff not one cent of gain or profit. As has been seen, plaintiff acquired the property by the purchase of shares in the Building Company which owned the property. If it is true the property was of greater value than he paid for the corporate shares in the Building Company, then any profit or gain made came to him at the several dates and years in which he made the purchase of the corporate shares, and all such profit or gain cannot be allocated to one single year, although the property so purchased through a series of years should all have been sold at a single sale and at a profit. This is held by the Supreme Court, Mr. Justice Field delivering the opinion for the court, in Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45, construing the income tax law of 1867. The head line, which clearly epitomizes the opinion is as follows: "The advance in the value of personal property during a series of years does not constitute the gains, profits, or income of any one particular year of the series, although the entire amount of the advance be at one time turned into money by a sale of the property. Accordingly, when bonds of the United States were sold by the owner, after being held by him four years, at an advance of $20,000 over their cost to him, it was held that this amount was not taxable as 'gains, profits, or income' of the owner for the year in which the sale was made, under the amendatory internal revenue act of March 2d, 1867."

Again, I am of the opinion no taxable profit, gain, or income came to the plaintiff by the mere change of title from the Building Company in exchange for the shares he held in that company under authorities controlling here. In Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570, Mr. Justice Pitney defines the word "income" as employed in the income tax statutes under consideration, as follows:

"After examining dictionaries in common use (Bouv. L. D.; Standard Dict.; Webster's Internat. Dict.; Century Dict.), we find little to add to the succinct definition adopted in two cases arising under the Corporation Tax Act of 1909 (Stratton's Independence v. Howbert, 231 U. S. 399, 415, 34 S. Ct. 136, 140, 58 L. Ed. 285; Doyle v. Mitchell Bros. Co., 247 U. S. 179, 185, 38 S. Ct. 467, 469, 62 L. Ed. 1054), 'Income may be defined as the

gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets, to which it was applied in the Doyle Case, 247 U. S. 183, 185, 38 S. Ct. 467, 469, 62 L. Ed. 1054.

"Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain,' which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. *'Derived—from—capital'*; 'the *gain—derived—from—capital,'* etc. Here we have the essential matter: *Not* a gain *accruing to* capital; not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value, *proceeding from* the property, *severed from* the capital, however invested or employed, and *coming in*, being *'derived'*—that is, *received* or *drawn by* the recipient (the Taxpayer) for his *separate* use, benefit and disposal—*that* is income derived from property. Nothing else answers the description."

[4, 5] Again, I am of the opinion, although it may be true the property in question may have been of a greater value on February 18, 1926, than the aggregate purchase price paid by plaintiff for the same by the purchase of shares in the Building Company which were exchanged for the building, that fact alone does not show any taxable income, gain, or profit to have come to the plaintiff, and for the reason no man has ever made any profit, gain, or income by the mere purchase of a tract of ground, lot, or building. Two acts must be done to make a taxable income or profit out of a real estate transaction: First, the property must be purchased at a price; second, the property must be sold to one willing, able, and ready to purchase and pay for the same in cash at an advance over the purchase price paid and expenses incurred in making purchase and sale. All over the purcase price paid and expenses incurred are profits, if any there be. This appears to be the rule adopted by the Board of Tax Appeals in Appeal of McMichael, 4 B. T. A. 266–269. It is there said: "Where property is purchased for less than its value gain or loss is realized not upon the purchase but only upon subsequent sale or disposition."

To like effect, in principle, is the recent case from the Court of Appeals for this circuit of O'Meara v. Commissioner of Internal Revenue, National Bank of Topeka v. Commissioner of Internal Revenue, and Elmhurst Inv. Co. v. Commissioner of Internal Revenue, 34 F.(2d) 390.

From all the foregoing, I am clearly of the opinion judgment in this case must go for the plaintiff to recover the tax paid, and interest as paid.

The motion to retax costs in this case is sustained.

It is so ordered.