## RICE et al v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2492.

Circuit Court of Appeals, First Circuit.

Feb. 19, 1931.

John N. O'Donohue, of Boston, Mass. (John F. Malley, of Boston, Mass., on the brief), for petitioners for review.

Frank M. Thompson, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the Commissioner.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

This is a petition for a review of the decision of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue, assessing a deficiency tax for the year 1924 against the Avenue Real Estate Trust, a Massachusetts trust organized to conduct a business for profit, which under the Revenue Act of 1924 is treated as a corporation in assessing an income tax. Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949; Pfleghar Hardware Specialty Co. v. Blair (C. C. A.) 30 F.(2d) 614. By the terms of the deed of trust, shares were issued with a par value of $100. On December 30, 1920, there were outstanding 5,303 shares, of which 5,253 were held by the estate of William B. Rice and 50 shares were held by John D. Hardy, the then trustee.

In 1920 the property held in trust consisted of a hotel known as the Hotel Puritan located on Commonwealth avenue in Boston, and, as the board found, because of its style of construction, location, and possibilities of further development by reason of the ownership of adjoining land, held a strong position. It was regarded as the best family hotel in Boston and was patronized by the very best class of people.

The board also found as facts that when constructed in 1909, it cost $602,699.03; that in 1920 it was in first-class condition; and by reason of its location, increased cost of construction, and the increased value of the land, that with its equipment, and with the adjoining vacant land, its fair market value on December 30, 1920, was about $1,000,000.

On its books on December 30, 1920, it was carried at a valuation of only $739,080.-16. It had additional assets on that date of accounts receivable, of cash on hand and pre-

100

paid insurance of $32,429.63, with current liabilities of only $10,379.35, or total book assets of $761,130.44, against which there was carried on the books a profit and loss account of $230,830.44, and 5,303 shares of the capital stock of the trust at $100 per share.

On December 30, 1920, the estate of William Rice owned a hotel property known as the Hotel Ericson, also located near by on Commonwealth avenue, which was subject to a mortgage of $80,000. On the above date it was decided by the representatives of the estate of William Rice and the Avenue Real Estate Trust to exchange the Hotel Ericson, subject to the mortgage, for 400 shares of the capital stock of the trust. The Hotel Ericson property was then placed on the books of the trust on a valuation to correspond substantially with the book value of the Hotel Puritan property, that is, the 400 shares of stock issued in exchange were placed on the books at the same valuation as the stock then outstanding, viz., $100 per share, making the apparent purchase price of the Hotel Ericson $120,000.

Evidently, at the time of conveyance to the trust of the Hotel Ericson, it had already been determined that the book values of the trust property should be readjusted and carried on the books at more nearly its actual value; since on the following day, December 31, 1920, the real estate of the Hotel Puritan property was increased on the books of the trust from $739,080.16 to $1,069,379.44, and the value of the Hotel Ericson property from $120,000 to $160,000, which, with the accounts receivable, prepaid insurance, and cash on hand, made total assets of $1,261,809.79.

Against this increase there was created a surplus account of $370,000, and to this surplus account was transferred from the profit and loss account $200,000, making a total surplus of $570,300. Against this surplus was then issued 5,703 shares of the capital stock of the trust, wiping out the surplus thus created and doubling the amount of capital stock outstanding.

In 1924 the trust disposed of the Hotel Ericson for $150,000, which, after paying the broker's commission, netted the trust $147,900. In making its income tax return for 1924, by some method of computation which does not appear in the record, the trust reported a loss on the sale of $8,594.68.

■ The basis for determining the gain or loss from the sale of property acquired after February 28, 1913, is the difference between the cost of the property to the taxpayer and the price at which it was sold. Revenue Act 1924, § 204(a), 26 USCA § 935(a).

■■ Where property is acquired by exchange, it is the fair market value of the property exchanged for that acquired which determines the cost. Neither the book value nor the actual value of the assets of a corporation, or trust of this nature, determines what its capital stock will bring in the market. Bessemer Inv. Co. v. Com'r (C. C. A.) 31 F.(2d) 248; So. Pac. R. Co. v. Muenter et al. (C. C. A.) 260 F. 837, 838.

The Commissioner of Internal Revenue, however, upon the basis that the cost of this property to the trust should be determined by the par value of the trust shares, at which it was then carried on the books of the trust, found that instead of a loss there was a profit on this sale of $31,405.92, which, with the loss reported, made a necessary adjustment of $40,000 for assessing the income tax of that year, which, with certain other minor items deducted—which are not involved in this case—resulted in a deficiency tax of $5,205.58.

From this assessment the trustees petitioned the Board of Tax Appeals to review the commissioner's findings and redetermine the tax. The board affirmed the commissioner's findings on the ground that it was presumed to be correct, and the petitioner had not shown what the actual cost of the Hotel Ericson was to the trust.

■ We think from the facts found by the board that the findings of the commissioner were clearly wrong, and the taxpayer was entitled to the sound judgment of the board on the evidence presented before it as to the fair market value of the 400 shares of stock. Obviously it did not receive it.

It is suggested that the transaction was merely a transfer from one hand to the other, and was not an "arm's length" transaction. While it is true the estate of William B. Rice on December 30, 1920, owned nearly all the stock of the trust, and also owned the Hotel Ericson, the 50 shares held by Hardy, the then trustee, so far as the record shows, was a bona fide holding, and his interests could not be sacrificed at will by the trustee or the majority holding of the trust shares.

However, it is, at least, clear from the findings of the Board of Tax Appeals as to the fair market value of the assets of the Avenue Real Estate Trust on December 30, 1920, the location of the property and its character, and the nature of its patronage, its income, and possibilities of further de-

velopment, that its capital stock would have brought on that date, as between some one who wanted to sell and some one who wanted to buy, much more than $100 per share, and that the tax should have been redetermined.

The entries on the books of the trust on December 30, 1920, prior to the exchange, did not show the fair market value of its capital stock; nor did the entry on its books, following the exchange, of the value of the Hotel Ericson on substantially the same basis as it was then carrying the property of the Hotel Puritan, determine the market value. Bessemer Inv. Co. v. Com'r, supra. And since the adjustment of the values of the Hotel Puritan property by the trustees in 1920 corresponds so closely with the findings of the board in 1925, it must be assumed that the trustee acted in good faith in 1920 in the readjustment of the book values to correspond with the actual values.

This court, it is true, upon the facts found by the board, might fix on some value for this stock. Except for the fact that the actual value of the assets does not necessarily determine the market value of capital stock, we might accept the maximum valuation insisted upon by the petitioner of $192.48 per share; but we do not have all the evidence before us, which was before the board, nor do we have the data, in case we do not accept the value on which the taxpayer's return was based, on which to determine the difference between the gain or loss resulting under the conclusions of the court as to the cost to the trust of the Hotel Ericson, and the loss on the sale as computed by the taxpayer in its return.

However, from the findings of the board itself, we think it is clear that the fair market value of the stock exchanged for the Hotel Ericson in 1920 was in excess of $170 per share, and therefore there was some loss on the sale of the property; but since this court cannot redetermine the tax from the record before it, the case must be remanded to the Board of Tax Appeals for the determination, in the exercise of its independent and sound judgment, and upon the basis herein outlined, of the fair market value of the 400 shares of the capital stock exchanged for the Hotel Ericson, and for a redetermination of the tax, taking further evidence, including that of experts, if it deems it necessary, as to its value. Chicago Ry. Equip. Co. v. Blair (C. C. A.) 20 F.(2d) 10; Boggs & Buhl v. Com'r (C. C. A.) 34 F.(2d) 859; Pittsburgh Hotels Co. v. Com'r (C. C. A.) 43 F.(2d) 345, 347; Nichols v. Com'r, 44 F.(2d) 157, 159; Heiner v. Crosby (C. C. A.) 24 F.(2d) 191.

The decision of the Board of Tax Appeals is vacated, and the case remanded for further proceedings not inconsistent with this opinion.