### LAW v. McLAUGHLIN, Collector of Internal Revenue.

#### No. 19108.

District Court, N. D. California, S. D.

Feb. 15, 1933.

Pillsbury, Madison & Sutro, of San Francisco, Cal., for plaintiff.

Geo. J. Hatfield and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

KERRIGAN, District Judge.

Plaintiff sold certain properties in 1924 which he had acquired before March 1, 1913, and which are known as the Marina properties. The government contends that plaintiff made a profit on the sale and has assessed and collected, on that basis, an additional tax from plaintiff; the payment of it was accompanied by formal notice of protest on the part of the taxpayer. Plaintiff contends that he not only made no profit on the sale, but in fact suffered such a loss that his entire tax for the year 1924 should be eliminated. He is suing for a refund of both the original and the additional tax paid for that year. The matter is before me upon demurrer to the complaint which sets forth in nine counts facts to show plaintiff's right of recovery; a different basis of determining cost being set forth in each of the counts with the exception of the second count.

The Marina properties were not purchased for cash by plaintiff, but were acquired as the result of the last transaction in a series of exchanges which tell an interesting story of the financial life of San Francisco. Prior to March, 1906, plaintiff acquired the Rialto building at a cost of over $1,200,000. In March, 1906, plaintiff traded this property for a one-half interest in the Fairmont Hotel property upon which the hotel was being constructed; his brother taking the other one-half interest for other consideration. In February, 1907, plaintiff and his brother transferred to Fairmont Hotel, Inc., a substantially closed corporation, their interest in the property, each receiving in exchange one-half of the capital stock of the corporation. April 16, 1908, plaintiff, his brother, and Fairmont Hotel, Inc., deeded to Mrs. Oelrichs the Fairmont Hotel property in exchange for the Marina property; plaintiff receiving an undivided 72 per cent. thereof, and his brother receiving the remaining undivided interest in the Marina and also other property not involved in this case. In October, 1908, plaintiff formed the Anglo-American Securities Company, a California corporation, and transferred to it certain properties belonging to him, including all of his interest in the Marina property. This was a one-man corporation, plaintiff owning all of the shares of stock with the exception of the directors qualifying shares, and during its entire existence plaintiff owned the sole beneficial interest in the corporation. In November, 1912, the Anglo-American Securities Company was dissolved, and plaintiff took back all of its assets into his own name, including the property in question. In 1913 plaintiff and his brother partitioned the Marina property according to their respective interests by an exchange of deeds. It is not claimed that the partition is a transaction having any bearing on the cost of the property. In 1917 plaintiff sold part of the Marina properties, and in 1924 sold the balance thereof. The capital gain or loss on this last transaction is the issue in this case. I have sketched the facts roughly eliminating the recitals in the complaint of capital investment by way of improvements and allocation of such investment to the sales in 1917 and 1924. These matters are not questioned on demurrer.

The statute under which the tax is assessed (section 204 (b) of the Revenue Act of 1924, 26 USCA § 935 (b), provides in its pertinent portions as follows: "The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property * * * or (B) the fair market value of such property as of March 1, 1913, whichever is greater."

The second cause of action relies upon the fair market value of the property on March

I, 1913. It is conceded by the government that this cause states one correct basis for computing the gain or loss if the plaintiff wishes to rely on it, and it is not demurred to.

I think the discussion of the other causes of action will be simplified if I state the theories upon which I am basing my ruling before discussing the allegations of the several counts.

The fundamental question at issue in this case is: What was the *cost* of the Marina properties sold in 1924? Where property is acquired as the result of an exchange or series of exchanges, the cost is either the money investment in the property used in the first exchange plus subsequent capital outlays or it is the value of the property given up in the exchange whereby it is acquired. An exchange is a mutual transfer of property other than for money, although one of the parties may pay a sum of money in addition to the property. 23 Corpus Juris, 186; section 1804, Civil Code of California (as it provided prior to repeal in 1931 and at time of all exchanges affecting this case). The view that cost is the original cash outlay is objectionable because of the large gains or losses which may have occurred in earlier transactions and which have no logical relation to the gain or loss on the property sold during the taxable year. If the property given up in exchange had been sold for money and the money reinvested in the new purchase, there would be no question of going back of the last purchase to gains or losses on the original investment. Similarly, I believe that under this statute, the acquisition of a piece of property, when its price is not money but other property given up for it, is equally a closed transaction. The cost of property acquired by exchange is the fair market value of the thing given in exchange at the time of the exchange. In the case of Rice v. Commissioner, 47 F.(2d) 99, 100 (C. C. A. 1), the court adopted this view in construing section 204 (a) of the Revenue Act of 1924 (26 USCA § 935 (a), which has a parallel provision as to property acquired after February 28, 1913, as follows: "The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property. * * *" In the Rice Case, a hotel had been taken in exchange for a block of stock in the purchasing company. The court held that the cost of the hotel was the fair market value of the shares of stock which were exchanged for it, saying, "Where

property is acquired by exchange, it is the fair market value of the property exchanged for that acquired which determines the cost." The same theory of cost was followed in Volker v. U. S. (D. C.) 40 F.(2d) 697; Reliance Investment Co. v. Commissioner, 22 B. T. A. 1287; Appeal of John J. Radel Co., 5 B. T. A. 250 (property acquired before March 1, 1913).

It is argued by plaintiff that the term *cost* as used in section 204 (b) is ambiguous, and that other statutory provisions relating to income tax on exchanges made under the Revenue Act of 1924 should be consulted to determine what Congress meant by cost on exchanges in the section in question. Since *cost* has been given a definite judicial construction in the cases cited above, it is unnecessary to consider this theory of plaintiff.

The next question is: When did plaintiff acquire the Marina properties? The government contends that he acquired them in 1912 when the Anglo-American Securities Company was dissolved and the taxpayer received all of its assets in liquidation. Plaintiff rejects this view on the ground, principally, that the Anglo-American was a one-man corporation and had never been more than a convenient form through which plaintiff held his property. In other words, plaintiff contends that the transfer of the property to the corporation and the return of it to plaintiff on dissolution of the corporation were but shadowy transactions which did not affect the real nature of plaintiff's ownership, and that a case is presented where the corporate fiction should be disregarded. I am in accord with this view, and believe that plaintiff acquired the Marina properties in 1908, and that its cost was the value of his interest in the Fairmont Hotel property.

It is not easy to formulate a simple and inclusive statement as to when the corporate entity will be disregarded. The cases are not altogether in harmony. The case principally relied on by the government is Insurance & Title Guarantee Co. v. Commissioner, 36 F.(2d) 842, 843 (C. C. A. 2). It is an income tax case in which Judge Learned Hand refused to disregard the corporate fiction. The plaintiff therein was a corporation which had transferred property to a new corporation which it had organized, received its entire authorized stock in exchange, and distributed the stock ratably among its own shareholders. Advantage was taken of the corporate attribute of divisible ownership of property, and Judge Hand expressly relies on that fact, saying: "Though courts at times

ignore the corporate guise, and look to the control reserved through share ownership, neither the law nor commercial custom assimilates absolute title with share holding for purposes of sale and so of profit. Shares are separate salable units, not even aliquot interests in the company's property, for their owner has no more than a right against the company, at least before insolvency. Collectively they may allow the holder still to deal with the assets as he will, but he adopts the corporate form just for a *new convenience in subdividing and disposing of his rights,* and because law and commerce impute substance to the change in form. This divisible command of money so realized does not exist until he does so; he must sell the goods en bloc or piecemeal, practically a very different thing. * * *" (The italics are mine.)

The same comment applies to the case of Volker v. U. S. (D. C.) 40 F.(2d) 697. Property was issued to a trust in exchange for stock, and the stock was sold piecemeal. The case most nearly like the instant one is Hinkel v. Motter (D. C.) 39 F.(2d) 159, appeal dismissed (C. C. A.) 42 F.(2d) 1018. There a corporation in which plaintiff was the sole owner of the stock was dissolved and its property transferred to plaintiff in liquidation. The court disregarded the corporate fiction and held there was no realizable taxable gain resulting from the transaction. The tendency of the Supreme Court of the United States to disregard changes in form of ownership without change in substance in cases of corporate reorganization is declared in Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520, and Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. The same tendency toward disregarding the corporate fiction is shown in other situations where all of the stock of a corporation is owned by one person or corporation. Davis v. Alexander, 269 U. S. 114, 46 S. Ct. 34, 70 L. Ed. 186; U. S. v. Reading Co., 253 U. S. 26, 40 S. Ct. 425, 64 L. Ed. 760; Wenban Estate v. Hewlett, 193 Cal. 675, 227 P. 723.

The taxpayer, then, acquired the Marina properties in April, 1908; its cost was the value of his interests in the Fairmont Hotel property which he gave in exchange for it at that time.

Passing now to a consideration of the several causes of action, the third cause sets forth the value of the plaintiff's interest in the Fairmont Hotel property at the time of the transfer for the Marina property, and, in accordance with the views just stated, states a cause of action. This cause is demurred to specially on the grounds that it does not allege the value of the stock in the Anglo-American Securities Company in 1912 and that it does not allege the March 1, 1913, value of the Marina properties. It is obvious from the discussion that the value of the Anglo-American stock is immaterial and need not be alleged. Neither do I believe that it is necessary to allege the March 1, 1913, value of the property. It is alleged and relied on in the second cause of action. The case may go to trial upon both counts, and, after the findings as to value, plaintiff may rely on the one most favorable to him. The general and special demurrers to this cause of action should be overruled. The first cause of action relies on an allegation of plaintiff's "basic cost," but there is nothing alleged to show the measure of such "basic cost." This cause alleges in paragraphs 1 to 10, inclusive, the jurisdictional facts and the proceedings in the Internal Revenue Department, and these paragraphs are incorporated by reference in the third cause of action. The demurrer to this count should be sustained, but it is understood that the ruling does not affect the allegations incorporated by reference in the third count. It is conceded by plaintiff that, if the demurrer to the third cause of action be overruled, the demurrers to the fourth, fifth, sixth, seventh, eighth, and ninth causes should be sustained.

It is hereby ordered that the demurrers to the third cause of action be, and the same are hereby, overruled, and ten days are granted to answer this cause of action and the second cause of action. It is further ordered that the demurrers to the first, fourth, fifth, sixth, seventh, eighth, and ninth causes of action be, and the same are hereby, sustained without leave to amend.