## FISHER v. BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N.

### No. 7402.

Circuit Court of Appeals, Ninth Circuit.

Aug. 31, 1934.

Rex B. Goodcell, of Los Angeles, Cal., for appellant.

Clarence M. Hanson, of Los Angeles, Cal. (Louis Ferrari, of San Francisco, Cal., and Edmund Nelson, Herbert Freston, and J. R. Files, of Freston & Files, all of Los Angeles, Cal., of counsel), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

As is disclosed by our opinion in the case of Bank of America Nat. Trust & Savings Ass'n v. Fisher, 61 F.(2d) 53, the receiver of the Lake View Oil & Refining Company sought the advice of the District Court regarding three certain contracts between the oil company and one John H. Fisher. Under the contracts in question, Fisher had advanced to the oil company money which was used to deepen two certain oil wells and to drill another. Under each contract, Fisher was to be reimbursed from the oil produced; that is, if no oil was produced, Fisher's money was lost, for he was given no right to claim as a general creditor of the oil company. In the event oil was produced, however, Fisher was to receive the net proceeds of the wells until the principal amounts of his advances were returned to him, and thereafter one-half of the net proceeds until he had been paid an additional sum equal to twice the amount of his advances, as bonus compensation. The District Court, following the request of the receiver of the oil company for instructions as to how to treat the "Fisher contracts," concluded that the contracts created preferential obligations, and gave to

Fisher an interest in the oil produced under the different ventures.

Thereupon the Bank of America, a creditor of the oil company, appealed to this court. We reversed the District Court and held (1) that "present title to oil in place cannot be transferred; nor can any sale of such oil be made without the right to go upon the land to extract it," and "Fisher had no such right"; (2) that Fisher was a joint adventurer, and had no right to reimbursement until payment to the general creditors of the company had been made. 61 F.(2d) 53, at page 55. In that opinion we noted that the District Court "had before it no evidentiary matter, and therefore was largely dependent upon the terms and provisions of the contracts themselves for guidance."

Thereafter the matter again came before the District Court on petitions of the receiver "for order as to the manner in which the receiver shall handle John H. Fisher joint adventure contracts on account of the decision rendered by the United States Circuit Court of Appeals." Voluminous exhibits were attached to the petitions. The District Court concluded that the former decision of this court is res adjudicata, "and that the receiver should follow the advice given therein in treating of the Fisher Claims." In so holding, the District Court filed a memorandum and order reciting facts material to our present inquiry, and from which we quote as follows: "It was the desire of Fisher to have the matter of his contracts presented a second time, with a showing of facts, and the receiver was agreeable to that plan. In the present proceeding the receiver has enlarged his petition, and attached thereto a very complete audit showing the facts with respect to outstanding indebtedness at the time the first Fisher contract was made, and detailed figures showing how the Fisher monies were applied to the specific ventures, different from the handling of the general business of the oil company, and the fact that no other creditor's money was used to complete the work on the wells on the particular leases covered by the Fisher contracts. In the preliminary statement above I have summarized those data."

That preliminary statement is as follows: "Paul J. Hisey was appointed receiver of the property of the defendant [Lake View Oil & Refining Co.] on May 8, 1931. The defendant company, for many years prior to the appointment of the receiver had been engaged in the production of crude oil and the refining thereof, and was the owner of a number of oil leases. At the date of the appointment of the receiver there were outstanding liabilities, as shown by the books of the company, amounting to the sum of approximately $341,930.00. To aid the company in financing its operations, John H. Fisher had advanced, under three separate contracts, money which, in the instances of the first two contracts was used in deepening and putting on production certain, separate wells, and under his last contract had advanced money to drill one certain well. The first contract, dated November 9, 1928, covered advances to be made by Fisher for work on what was called the Pentland Lease and on wells numbered 5, 13 and 17. The second contract, dated October 21, 1929, covered advances afterwards made for the drilling of wells numbered 12 and 16 on Midway Fields Lease. The third contract covered advances afterwards made to drill Well 44 on the Pat Welch Lease. Under each contract Fisher was to look solely to the oil product to be secured from each separate venture, for reimbursement. In other words, if no oil was produced, Fisher's money was lost, for he was given no right to claim as a general creditor of defendant company. In the event oil was produced, however, Fisher was to receive the net proceeds of the wells until the principal amounts of his advances were returned to him, and thereafter one-half of the net proceeds until he had been paid an additional sum equal to twice the amount of his advances, as bonus compensation. Under the first contract Fisher advanced $27,550.00, and had been paid, at the time of the appointment of the receiver, $63,080.13. Under the second contract Fisher advanced $70,000.00, and was paid, prior to the appointment of the receiver, $60,-034.74. Under the third contract Fisher advanced in cash and credits $38,500.00. He had not been reimbursed in any amount on the latter contract at the time the receiver was appointed. So far as appears, the money of no creditor was used in the ventures undertaken under the Fisher contracts, and all claims for material and labor incident to the work have been paid. No note is taken of certain expenditures made in addition to the funds received from Fisher, for they do not concern the questions now before the court. At the time the first Fisher contract was made the company was indebted to Citizens National Trust and Savings Bank for borrowed money in the sum of $20,125.65; and was indebted to American National Trust and Savings Association for borrowed money in the sum of $141,028.02. The principal of the latter amount is shown to have been borrowed in connection with the acquisition of El Dora lease and equipment, a different lease

from those concerned under the Fisher contracts."

From the decision and order of the District Court that the matter is res adjudicata, Fisher has prosecuted this appeal.

The Bank of America, the appellee, has interposed a motion to dismiss or affirm, on the following grounds:

(1) "The present appeal is frivolous and moot in that appellant Fisher seeks only an adjudication that his contracts with the Lake View Oil and Refining Company give him a claim superior to the claims of the general creditors of that company, notwithstanding that identical claim was passed on adversely by this court." 61 F.(2d) 53.

(2) Our former decision became the law of the case when the mandate went down, and Fisher's remedy for an avoidance thereof was by application for certiorari.

(3) This court is without jurisdiction to grant the relief sought by Fisher on this appeal.

(4) Our former decision is the law of the case and res adjudicata, for the following reasons: "In cause No. 6687 [the former appeal to this court] the bank [appellee herein] specifically contended that as a general creditor of the Lake View Oil and Refining Company, it was entitled to priority over Fisher and that the creditors who had joined with it in the appeal were likewise entitled to such priority. The issue was squarely made by the bank not only in its answer, but in the assignment of errors and in its brief and argument in this court. Fisher, in this court, claimed a right to priority by virtue of title to oil in place, and in the alternative, if he were a joint adventurer, that the bank could not prevail as it was not shown to be a creditor of the joint adventure as such, but only a creditor of the Lake View Oil and Refining Company. This court met the issue squarely by holding, in clear-cut language, that the general creditors of the Lake View Oil and Refining Company as such, were entitled to priority over Fisher. The claim now made by Fisher that this court, by the language of its opinion, meant that general creditors only of the so-called joint adventure had priority is thus not well taken nor, as a matter of law, maintainable. If Fisher, in view of this court's opinion, had wished to have the opinion limited to giving a priority in favor only of general creditors of the joint adventure as such, then he should have petitioned for a rehearing, or sought a modification or correction of the opinion, [or filed an application to the Supreme Court for a writ of certiorari] before the mandate went down."

From a statement contained in the appellant's brief, it is apparent that he has misread our decision on the first appeal. Counsel says that we were "perfectly right in ordering that the general creditors of each several joint adventure[r] should be paid in full before any of the assets of any one of such joint adventures should be distributed to Mr. Fisher."

Such was not our holding. As we have already stated, this court specifically ordered that "the general creditors of the company" should be paid, before any of the assets were distributed to the appellant herein.

We do not conceive that the creditors of a corporation are to be subdivided into as many groups as there are enterprises in which such corporation may happen to be engaged. The "general creditors" to whom our language plainly referred were general creditors of the *company,* and not of any particular *oil well.*

It is this misapprehension on the appellant's part, we believe, that has led him, on the second appeal, to lay such stress upon the finding of the court below that, "so far as appears, the money of no creditor was used in the venture undertaken under the Fisher contracts, and all claims for material and labor incident to the work have been paid." Similarly, the appellant stresses the lower court's finding that the receiver presented a complete audit and "detailed figures showing how the Fisher moneys were applied to the specific ventures, different from the handling of the general business of the oil company, and the fact that no other creditor's money was used to complete the work on the wells on the particular leases covered by the Fisher contracts."

Accordingly, the appellant's lengthy argument on the effect of the disclosures of the audit cannot alter our conclusions in the first appeal.

Furthermore, even if the audit disclosed some pertinent facts, it would be powerless to alter the prior judgment of this court. There must be an end to litigation, and a party cannot be permitted to re-appeal his case as often as he may find new facts and figures to support his position. Were we to grant the appellant's plea for another hearing before us on the merits, and were that hearing to be decided in the appellant's favor, should we not, in all fairness, be compelled to grant the appellee another hearing if, at some future date, the appellee in its turn should be able to adduce additional "evidentiary matter?" The appellant does not suggest at what point the prolongation of the proceedings should end.

638

The court below has correctly interpreted our decision and mandate on the first appeal, and its order on the receiver's "enlarged petition" should not be disturbed.

There is ample authority to support our view.

In Roberts v. Cooper, 20 How. (61 U. S.) 467, 481, 15 L. Ed. 969, the court said: "But we cannot be compelled on a second writ of error in the same case to review our own decision on the first. It has been settled by the decisions of this court, that after a case has been brought here and decided, and a mandate issued to the court below, if a second writ of error is sued out, it brings up for revision nothing but the proceedings subsequent to the mandate. None of the questions which were before the court on the first writ of error can be reheard or examined upon the second. To allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute on the first, would lead to endless litigation. In chancery, a bill of review is sometimes allowed on petition to the court; but there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate on chances from changes in its members. [Many cases cited.]"

The Supreme Court has repeatedly restated the foregoing salutary doctrine. Supervisors of Wayne County v. Kennicott, 94 U. S. 498, 499, 24 L. Ed. 260; Stewart v. Salamon, 97 U. S. 361, 362, 24 L. Ed. 1044; Illinois v. Illinois Central R. Co., 184 U. S. 77, 91–93, 22 S. Ct. 300, 46 L. Ed. 440; Missouri Pacific Railway Company v. Larabee Flour Mills Company, 241 U. S. 649, 36 S. Ct. 552, 60 L. Ed. 1220.

This court has steadfastly adhered to the same rule. Republican Min. Co. v. Tyler Min. Co., 79 F. 733, 735, certiorari denied, 166 U. S. 720, 17 S. Ct. 998, 41 L. Ed. 1187; Sorensen v. Pyrate Corporation (C. C. A.) 65 F.(2d) 982, 985, and cases there cited, certiorari denied, 290 U. S. 689, 54 S. Ct. 124, 78 L. Ed. 593.

The same rule has been adopted in other circuits. Wilson v. United States (C. C. A. 3) 65 F.(2d) 621, 624; Mortgage Loan Co. v. Livingston (C. C. A. 8) 66 F.(2d) 636, 640, certiorari denied 290 U. S. 685, 54 S. Ct. 121, 78 L. Ed. 590; Jones v. Box Elder County (C. C. A. 10) 67 F.(2d) 900.

The cases cited by the appellant in support of his contention that we should reopen the controversy at this time are either not apposite or not controlling.

Order and judgment affirmed.