## HUNT v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7736.

Circuit Court of Appeals, Fifth Circuit.

March 19, 1936.

Rehearing Denied April 16, 1936.

SIBLEY, Circuit Judge, dissenting.

Harry C. Weeks, of Wichita Falls, Tex., for petitioner.

Robert N. Anderson and Sewall Key, Sp. Assts. to the Atty. Gen., Frank J. Wideman, Asst. Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is the second time that this proceeding to fix petitioner's liability as transferee of Burkburnett Refining Company has been here.[1] It was here before on the Commissioner's petition to review the ruling of the Board that the collection of the tax was barred. This ruling was based on its finding that a limitation waiver Hunt had executed as president of the company, more than three years after its dissolution, was ineffective to bind the company. We held that Hunt was estopped to set up his lack of authority and to dispute the binding effect of the waiver. We reversed the Board's findings and sent the cause back for further proceedings consistent with our holding that Hunt was estopped.

The Board deemed the issue of estoppel settled by our decision. It declined to consider the proof petitioner offered on that issue. It considered only whether petitioner had, and determined that he had not, established the deduction he claimed.

This claim was based on the failure of the company to receive, and therefore its loss of, portions of the plant equipment the company had contracted with one Hoyt to deliver to it in exchange for 1,500 shares of its stock, of the par value of $150,000. As pleaded, the claim was that the Burkburnett Refining Company purchased from Hoyt a large amount of refinery equipment and agreed to pay for it, $150,000. That certain equipment which he contracted to deliver, itemized in the petition and separately valued, aggregating a total of $66,000 in value, was not delivered. That

after the agreement was executed it was modified so that in lieu of cash, stock of the par value of $150,000 was to be issued and all but $22,500 was issued to him. That thereafter he failed to deliver the listed equipment at the price and value of $66,000. That the corporation kept the unissued stock of $22,500 as an offset and thereby suffered a loss of $43,500. That Hoyt became insolvent during the fiscal year and the corporation was unable to recover the loss. There is no pleading as to the cost or the value of the machinery at the time of the trade with Hoyt; none as to the value of the stock at that time. Read the record as one will, no more can be made out of it than that Hoyt, as one of or in agreement with the promoters of the Burkburnett Company, took half of the capital stock for the machinery he agreed to furnish. That he assigned his contract for the stock, and then failed to perform his part of it by delivering the machinery. That in a controversy with the assignee over the delivery of the stock, a settlement was effected by which part of the machinery promised was delivered, and in lieu of the balance undelivered $22,500 in money was accepted.

Daniel, one of the promoters and directors of the company, said: "Our proposition was that we were to get so much money, or that they were to put that refinery up to 2,000 barrels per day capacity, and finally in closing the deal with them my recollection is we got $22,500 in money."

Appellant's counsel, in stating his defense before the Board, stated it thus: "This concern was incorporated and began construction of a refinery late in the year 1917. It had a capital stock of $300,000 which was paid in, $150,000 of it by purchase from a man named F. C. Hoyt for a refining plant it being the plan of the organizers to move that plant to Burkburnett, Texas. The remainder, or practically all of it was paid in in cash. The contract with Hoyt was made November 1, 1917, at which time the equipment purchased was at Wichita. On November 2, 1917, they issued to him a certificate of stock for 1500 shares of their capital stock in payment for this equipment which had not then been delivered. He transferred that stock November 22, 1917, to the Occidental Oil Refining Company. The usual delays in constructing a refinery were encountered, and when they wound up they found that something

between one third and one half of the equipment which they had purchased from Hoyt and paid for with this stock had not been delivered."

No proof was offered, in support of the pleading, as to the value of the items not delivered. No witness testified to the value of the whole property, or any part of it. None, to the value of the stock when, as part of the promotion, it was issued. There was testimony that the other half of the stock was sold for cash, and that in the following year, when the settlement was finally made, the stock had become valuable, because the company had put a lot of money into the plant. As to the machinery, while there was testimony that only about one-half of it was delivered, there was positive testimony that the whole thing was practically junk and was worth very little, and that the half not delivered was of small value.

In its original return, the company had claimed a $15,000 loss on account of this transaction. Just how this claim was asserted, or what form it took, does not appear. It does appear that the Commissioner rejected the claim as presented on the ground that "as claimed, it was not deductible because the transaction was a capital one and does not constitute an allowable deduction in computing taxable income." The Board refused to allow the deduction on the ground that the record furnished no basis upon which any loss could be computed.

Petitioner brings the Board's action here for review upon two claims: (1) That the Board should have considered the new evidence it offered on the estoppel issue, and should have found that the Commissioner was not misled by Hunt's action in signing the waiver, and therefore Hunt was not estopped by his having done so; and (2) that the proof definitely established the deduction claimed and the Board erred in not allowing it.

■ We do not agree with petitioner. We think it quite clear that our former opinion is the law of the case upon the issue it decided, that of estoppel, and it was not open to petitioner to relitigate it. Swenson v. Commissioner (C.C.A.) 69 F.(2d) 280; Seagraves v. Wallace (C.C.A.) 69 F. (2d) 163, 164; Fisher v. Bank of America Nat. Trust & Sav. Ass'n (C.C.A.) 72 F. (2d) 635; United States v. Camou, 184 U. S. 572, 22 S.Ct. 505, 46 L.Ed. 694; Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 24 S.Ct.

538, 48 L.Ed. 788; In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S.Ct. 291, 40 L. Ed. 414.

As to the deduction claim, we agree with the Board that the proof was wholly insufficient to establish it. Petitioner argues that the Board rejected the claim on the ground that it was a claim for loss, resulting from the issue of capital stock. While petitioner pleaded his case that way, the Board did not decide it on that ground. The Board correctly stated that the loss, if any, which petitioner suffered was measured by the difference between the actual value of the consideration received by Hoyt, that is, the stock, and the material and cash the company received on account of the contract. It correctly found that there was no proof at all from which it could be found what the loss, if any was. Petitioner's whole insistence rests on the assumption, wholly unsupported by proof, that the 1,500 shares the company agreed to issue to Hoyt for refinery machinery was, when the contract was made, worth $150,000, therefore the cost of the machinery was that much. There is no proof that the stock was worth anything in the promotion stage it was in when the contract was made, except the value of the machinery which was agreed to be paid for it. Indeed, as not a dollar had been paid into the company, and not a single share had been sold, there was no measure of its worth or value, except that of the machinery for which it was issued. In the absence of proof as to what that machinery was worth, petitioner is without any basis to compute his loss for failure to deliver any part of it. He cannot do this by proving what the balance of the treasury stock sold for at a later period, or what the stock was worth when considerable sums of money had been paid in on the plant. The basis for the determination of his loss is the value of the stock when it was contracted to be given in exchange for the machinery. If he had proven this by proving the value of the machinery at that time, he would have established his cost basis. If he had proven that the half of the machinery which was not delivered continued to be of the same value, and that it was worth more than the $22,500 cash paid in lieu of delivery, to the extent of the difference he would have established his loss. According to the undisputed testimony, the whole of the machinery was not worth much above junk value. It is reasonable to assume that the $22,500 which the company required the as-

signee to pay before it would deliver the stock was at least as much as the reasonable value of the machinery it failed to get.

■ In this state of the record, with no proof of what the stock was worth at the time the contract was made to measure the value of the machinery by, nor of the value of the machinery to measure the value of the stock by, there is no basis in the record for a deduction allowance on this score; indeed, the reasonable deduction from all the evidence is that there was no loss.

■ One who claims a deduction must prove his right to it by evidence not leaving the matter in the realm of speculation and conjecture, but making his title to it clear. McGinley Corporation v. Commissioner (C. C.A.) 82 F.(2d) 56.

The Board's finding and decision were correct. The petition is denied.

SIBLEY, Circuit Judge (dissenting).

I think the case should be remanded to the Board because it applied a wrong rule of law and did not attempt to find the facts. The Board said: "If any loss resulted from the issue of the 1500 shares of the taxpayer's stock, it resulted from Hoyt's breach of contract in which he undertook to deliver certain assets, and remedy would lie in a suit against him for specific performance or damages in lieu thereof. No such action was taken, and the whole matter was compromised by the payment of $22,500 to the taxpayer. The resulting loss, if any, was the difference between the value of the property actually delivered plus $22,500 and the actual value of the consideration received by Hoyt." The Board then stated that there was no evidence of the true value of the equipment delivered, and that it could not therefore find the amount of the loss, or discover any basis on which the loss was claimed or could be computed. It is true there was no definite value proved of the equipment delivered, but its value was immaterial. The Board had in mind the measure of damages (but inaccurately stated) in case this were a suit for breach of contract against Hoyt. But it is not such a case. Hoyt in writing first sold the refining plant to taxpayer for $150,000. He later verbally agreed to take 1500 shares of stock in payment, and the stock was issued to him. The other 1500 shares of the capital stock were paid for by others at par in cash. There is no reasonable difficulty in determining that the cost of the equipment ought to be taken at $150,000. It was not worth nearly so much, but the Commissioner had rightly held that no deductible loss arose on buying property too dear, albeit with capital. The loss must be realized by some disposition of the property. Approximately half in value of the purchased equipment was delivered and erected, and represents an investment of $75,000, but its real value is wholly immaterial now for it has not been disposed of and no loss can be deducted as to that property. But the half of the equipment which was never delivered is gone. It became represented by a claim for damages for breach of contract against Hoyt. On that claim $22,500 was paid by the assignee of Hoyt's stock, but not in satisfaction of Hoyt's liability, but to get the stock transferred on the taxpayer's books. The balance of the claim against Hoyt was carefully investigated, ascertained to be wholly insolvent, and charged off. It is a total loss. To me it seems plain that the inquiry is, What was the loss on that part of the equipment bought but not delivered? Its cost ought to be taken at $75,000, as all the testimony is that about half in value was delivered and half not. The purchase price ought to be apportioned accordingly. What was realized against this cost was $22,500 wrung from a third party. The difference, $43,500, is the loss claimed by taxpayer. There is plainly a loss. It was realized when the $22,500 was collected and the remainder of the claim charged off. The deduction must be allowed at that date, if ever. The taxpayer is treating the half delivered as representing half of the purchase price, $75,000, though the evidence suggests that it is worth much less. But its value has nothing to do with the loss here claimed. Taxpayer conceded that it has not yet realized any deductible loss on the equipment which was delivered.

### On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of the opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same is hereby, denied.