**CHAMPLIN REFINING CO. v. COMMIS-
SIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVE-
NUE v. CHAMPLIN REFINING CO.**

Nos. 2259, 2287.

Circuit Court of Appeals, Tenth Circuit.

Oct. 29, 1941.

Harry O. Glasser, of Enid, Okl., for petitioner Champlin Refining Co.

Harry Marselli, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., on the brief), for respondent Commissioner of Internal Revenue.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Both petitioner and respondent have appealed from the decree of the Board of Tax

Appeals finding deficiencies in income taxes assessed against petitioner, the Champlin Refining Company, a corporation, for the years 1923, 1924, 1925 and 1926. The sole question presented for consideration is the basis to be used in computing deductions for depletion allowances on an oil and gas lease known as the Beggs Lease.

H. H. Champlin bought the Beggs Lease for a consideration of $12,000. He and his wife developed the lease and operated it for a number of years. In 1920 they incorporated the Champlin Refining Company and transferred the lease to it, taking in consideration therefor all of the stock of the company except four qualifying shares.

Petitioner is not a discoverer of an oil and gas well, but the purchaser of a proven lease and its base for depletion allowance under § 234(a) (9) of the Revenue Act of 1921, 42 Stat. 256, § 204(a) (8) of the Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 9, and § 204(a) (8) of the Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 153, is the cost of the lease to it.

Where property is given in exchange for other property, the cost of the property acquired is the value of the property given in exchange therefor. Commissioner v. Schumacher Wallboard Corp., 9 Cir., 93 F.2d 79; Hazeltine Corp. v. Commissioner, 3 Cir., 89 F.2d 513; Rice v. Commissioner, 1 Cir., 47 F.2d 99; Hershey Mfg. Co. v. Commissioner, 10 Cir., 43 F.2d 298; Law v. McLaughlin, D.C., 2 F.Supp. 601; Volker v. United States, D.C.Mo., 40 F.2d 697. The stock of the Champlin Refining Company given in exchange for the lease had no established market value because it was all owned by Champlin and his wife and none of it was for sale and none had been sold to the public. But it nevertheless had value. In such a case we look to the value of the assets exchanged for the stock—in this case, the Beggs lease—to determine the value of the stock. Commissioner v. Swenson, 5 Cir., 56 F.2d 544; Hunt v. Commissioner, 5 Cir., 82 F. 2d 668; Commissioner v. McKinney, 10 Cir., 87 F.2d 811.

The Beggs Lease was what is known as a "top lease". Champlin's title to the lease was bitterly contested in the courts in litigation extending over many years. This litigation was in full progress at the time of the creation of the corporation and the transfer of the lease to it. It is conceded that the value of the Beggs Lease free from title hazard was $1,530,000. The Board rightfully took into consideration the pending litigation in evaluating the lease, for it is obvious that a questionable title is less valuable than a clear one. It fixed the value of the Beggs Lease at $1,-147,500. This valuation is not challenged by either party as being unsupported by substantial evidence. The attack upon it by both sides is that in reaching its conclusion as to the value of the lease the Board applied erroneous principles of law. Both sides rely on former decisions of this court involving this lease to sustain their contentions. Respondent relies on the decision in Champlin v. Commissioner, 10 Cir., 71 F.2d 23, and petitioner upon Champlin v. Commissioner, 10 Cir., 78 F. 2d 905.

In Champlin v. Commissioner, 71 F.2d 23, the question was whether the exchange of the lease for the stock of the corporation resulted in taxable gain to Champlin. The Board held that the clouded lease had a value of $1,147,500; that this established the value of the stock that Champlin received for the lease, and that he therefore realized as taxable gain the difference between the $12,000 he paid for the lease and the $1,147,500 that he received for it. This court reversed the Board, holding that on account of the litigation over the title, there was no market value for the stock given in exchange for the lease and therefore no realized taxable gain had accrued to Champlin from the exchange.

The second appeal, Champlin v. Commissioner, 10 Cir., 78 F.2d 905, involved the basis to be used for computing deduction for depletion allowances to Champlin. In determining the value of the lease for depletion purposes, the Board took into account the cloud on the title and fixed the value at $1,147,500 rather than at the full value of the lease, free from clouds on the title. This court, on appeal, reversed, holding that Champlin as discoverer was entitled to the full discovery value of the property for depletion purposes.

Respondent contended before the Board that the decision of this court in Champlin v. Commissioner, 10 Cir., 71 F.2d 23, was the law of the case. He argued in effect that there this court held that the stock had no market value and that therefore, if the corporation exchanged something that had no market value, or at best only a nominal value, the lease cost nothing

and therefore petitioner is entitled to no depletion, or at most to $6,578.27, the unrealized portion of the cost of the lease to Champlin. Petitioner, on the other hand, contended that the holding of this court in Champlin v. Commissioner, 10 Cir., 78 F. 2d 905, that Champlin was entitled to depletion on the full value of $1,530,000 without taking into account the cloud on the title, established the value of the lease for depletion purposes and was the law of this case, and that therefore the Board was wrong as a matter of law in finding a value of $1,147,500 for depletion deduction purposes to the corporation.

■ Neither the parties nor the issues herein are the same as in the former cases. There the litigation was between Champlin and the government. Here it is between the corporation and the government. There Champlin was allowed depletion as the discoverer and developer of the property, while here petitioner is entitled to depletion as purchaser of a developed lease. Neither of the former decisions constitutes the law of this case.

On the hearing before the Board, the records in the two former cases were introduced, other factors were considered, the Board took into account the litigation and the cloud on the title to the lease that was transferred. In his opening statement before the Board, the attorney for petitioner stated:

"One of the considerations here will be whether our depletion should be computed and allowed on the depleted cost to its prior owners, H. H. Champlin and A. D. N. Champlin, in the stipulated sum of $6,578.27, or whether the depletion shall be on $1,147,500, which represented the stipulated value of the lease with a hazard allowed at 25 percent on the title, or whether the depletion shall be on $1,530,000, which represents the agreed value of the lease without any litigation on it."

He further stated: "If the Government's position is correct the depletion allowance would be on the basis of $6,578.27. If the Board should conclude that the depletion allowance should be the stipulated fair market value of the property subject to the hazard in its title, then it would be on $1,147,500. And if, on the contrary, it should be on the $1,530,000, then that would be upon the basis of title clear."

This statement was acquiesced in by counsel for respondent. It therefore appears that the parties stipulated the value of the lease both in the event the title hazard should be taken into account and in the event that the title should be considered free from hazard.

■ Respondent apparently has shifted his position on this appeal. Before the Board he contended that the sum of $6,578.27, the unrealized portion of the cost of the lease to Champlin, was the base for computing depletion allowance to petitioner. He now contends that the case should be remanded to the Board with directions to redetermine the fair market value of the lease in the light of the evidence before it, in order to determine the cost of the lease to petitioner. But this is exactly what the Board did. It considered the title hazard, the evidence before it, and placed a valuation on the lease. What Petitioner in 2287 really means is that the decision of this court in Champlin v. Commissioner, 10 Cir., 71 F.2d 23, compels a holding that in light of the title hazard the lease had only a nominal value and that therefore the cost to the company of acquiring the lease was nominal, and that this nominal cost was the base for computing depletion allowances to petitioner. With this we cannot agree.

The Board properly took into account the title hazard in determining the value of the lease, and from a consideration of all of the evidence before it, concluded that the fair value of the lease was $1,147,500.

Its conclusion and decision find support in the record, and the decision is therefore affirmed.