ROBERT D. BEARD, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 29420–82.     Filed May 24, 1984.

Robert D. Beard, pro se.
*Timothy S. Murphy* and *Joseph Chalhoub,* for the respondent.

WHITAKER, *Judge*: This case is before us on respondent's motion for summary judgment.[1] Pursuant to Rule 121,[2] a response to the motion was filed by petitioner on February 13, 1984 (the response). On February 22, 1984, the motion for summary judgment was heard. Respondent was represented by counsel but there was no appearance by or on behalf of petitioner. The motion was taken under advisement.

In the notice of deficiency issued to petitioner, respondent determined a deficiency in petitioner's 1981 Federal income tax in the amount of $6,535. In the answer, respondent alleged

---

[1]In accordance with Rule 121, Tax Court Rules of Practice and Procedure, such motion was filed on Jan. 17, 1984, and was submitted more than 30 days after the reply was filed in this case.

[2]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue.

that additions to tax were due under section 6651(a)(1) for failure to file a return, and section 6653(a) for negligence or intentional disregard of the rules and regulations. Additionally, damages pursuant to section 6673 for instituting proceedings before the Tax Court merely for delay were requested.

The petition alleged as errors in the notice of deficiency that petitioner's wages are not taxable income and were wrongfully included in his gross income. He claims that his receipts are a product of the exchange of labor for wages. Since the fair market value of the labor transferred is equivalent to the amount of wages received, there is no excess gain to be reported as taxable income.[3] The "equal exchange" theory was also set forth in a memorandum signed by petitioner and submitted to the Internal Revenue Service as part of the purported "return" for the 1981 year. A copy of the memorandum was attached to his petition.

In his reply, petitioner alleges "the petition contains specific justiciable errors of law and/or fact in relation to the recognition by the Respondent of the Petitioner's 'labor' to be 'property.'"[4] Petitioner asserts that he has arrived at his conclusions by lengthy study and research of the rules and regulations. He contends that no additions to tax are due under sections 6653(a) and 6651(a)(1). Petitioner denies he was required to file a 1981 income tax return on or before April 15, 1982, in that he owed no tax liability for that year. He admits that the document in question in this case is the only submission he made to the Internal Revenue Service for the 1981 year, claiming that it is a return under section 6012 because it contains figures and numbers from which to compute a tax. Furthermore, he requests a trial by jury on all issues raised by the pleadings and alleges respondent has the burden of proof on all issues. Finally, he denies he has begun this proceeding before this Court merely for the purpose of delay.

---

[3]This theory hereinafter will sometimes be referred to as the "equal exchange" theory. He also argues that the Commissioner has erroneously implied that he is a tax protester, which may prejudice this Court against petitioner in this case. We find this is a rhetorical argument rather than an assignment of error.

[4]This is the only justiciable error alleged by petitioner in the reply in response to respondent's allegation that there was no justiciable error present. Rule 37(c) provides, "where a reply is filed, every affirmative allegation set out in the answer and not expressly admitted or denied in the reply, shall be deemed to be admitted."

We must first decide whether any genuine issue of material fact exists to prevent our summary adjudication of the legal issues in controversy. Rule 121. If summary judgment is warranted, we must decide whether (1) petitioner or respondent has the burden of proof as to the issues raised in the pleadings; (2) the wages earned by petitioner are taxable; (3) petitioner is entitled to a trial by jury; (4) the purported "return" filed by petitioner was a return for the purposes of sections 6011, 6012, 6072, and 6651(a)(1); (5) the failure to include these wages in taxable income was due to negligence or intentional disregard of the rules and regulations for section 6653(a) purposes; and (6) under section 6673, an award of damages for instituting a proceeding before this Court merely for the purpose of delay is merited.

Certain facts are not disputed by the parties. Pursuant to Rule 121, respondent filed an affidavit with exhibits in connection with the instant motion.[5] Petitioner did not file any affidavits or exhibits. The undisputed documents supplied by respondent and the undisputed facts in the pleadings constitute the facts used for the purposes of this motion. Rule 121(c).

### FINDINGS OF FACT

Petitioner resided in Carleton, Mich., when the petition was filed in this case. During the 1981 taxable year, petitioner was employed by, and received wages from, Guardian Industries totaling $24,401.89. Such amounts were actually received by petitioner during that year.[6]

He submitted to the Internal Revenue Service the below-described form and an accompanying memorandum dated February 22, 1982, as his 1981 return, thus indicating his protest to the Federal income tax laws. No other document alleged to be a return for the 1981 year was submitted.[7] This

---

[5]An affidavit of Timothy S. Murphy, an attorney who has custody and control over the Commissioner of Internal Revenue's administrative file along with exhibits, was filed on Jan. 17, 1984. The attached exhibits include a copy of the statutory notice sent to petitioner for the 1981 year, a copy of Form W-2 issued to petitioner, a copy of the purported "return" and accompanying memorandums submitted by petitioner, a copy of petitioner's 1979 tax return (he filed a joint return) with accompanying Forms W-2, and a Form CSC 8–255–B letter sent to petitioner dated July 16, 1982.

[6]Petitioner admits in his petition that he actually received such amounts.

[7]Petitioner did not allege that an extension of time to file was requested.

document (the tampered form) was prepared by, or for, petitioner by making changes to an official Treasury Form 1040 in such fashion (by printing or typing) that the changes may not be readily apparent to a casual reader.[8]

In that part of the first page of the official form intended to reflect income, petitioner deleted the word "income" from the item captions in lines 8a, 11, 18, and 20, and inserted in those spaces the word "gain." On line 21 of the form, he obliterated the word "income" from the item caption. In addition, in the margin caption to this section, petitioner deleted the word "Income" and inserted the word "Receipts."

In that part of the first page of the form intended to reflect deductions from income, he deleted the words "Employee business expense (attach Form 2106)" from line 23 of the form and inserted "Non-taxable receipts." In addition, in the marginal caption to this section, petitioner deleted the word "Income" and inserted the word "Receipts," so that the caption reads "Adjustments to Receipts" instead of "Adjustments to Income."

Petitioner filled in his name, address, Social Security number, occupation, and filing status in addition to the name, occupation, and Social Security number of his spouse. He claimed one exemption on the tampered form. The relevant information entries are as follows: On line 7 entitled "Wages, salaries, tips, etc.," taxpayer inserted the amount of $24,401.89. On line 23, under the category of "Non-taxable receipts," petitioner claimed an adjustment to "Receipts" of $24,401.89. He therefore showed a tax liability of zero. On line 55, entitled "Total Federal income tax withheld," he showed an amount of $1,770.75. The total $1,770.75 that had been withheld from his wages was claimed as a refund. This tampered form was signed by petitioner and dated February 22, 1982. Petitioner's Form W-2 issued by Guardian Industries was attached.

Petitioner's scheme in submitting this tampered form apparently was to conceal from the Service Center operators the fact that his inclusion of his wages on the tampered form was negated by his fabrication of "Non-taxable receipts" on line 23, thus simultaneously excluding the wages theoretically report-

---

[8]Since the Court records only contain copies of the tampered form, we cannot comment to what extent the tamperings are evident to the naked eye.

ed. The net effect of the two steps was to create a zero tax liability. Since his employer had withheld against the amounts paid to him for the 1981 year, this scheme allowed him to claim a refund for that year.

Petitioner has not always protested against his duty to pay taxes. For taxable year 1979 petitioner and his spouse, cash basis, calendar year taxpayers, reported jointly on an official Treasury Form 1040A, wages they received as taxable income, and showed the appropriate tax on such income. Their taxes withheld exceeded their tax liability and they were due a small refund. The Treasury Form 1040A was fully completed and correctly reflected the wages shown on the Forms W-2 they received.

Petitioner has studied court cases, statutes, rules, and regulations pertaining to income tax. He recognizes that this Court has, on numerous occasions, categorized the "equal exchange" theory that wages are not subject to income tax, as frivolous and utterly without merit.[9]

The instant case is one of 23 cases that were on the March 5, 1984, trial calendar for Detroit, Mich., in which tampered forms are at issue.[10] Many other similar cases are pending before this Court. All of these 23 cases contain a fabricated adjustment for "Non-taxable receipts." All were submitted to the Internal Revenue Service in the year 1980[11] or 1981.[12] All but 2 of the 23 were submitted with two- or three-page memorandums advocating that wages are not taxable income. Twenty-two of the petitions in these cases contained identical language except for entries relevant to the petitioners' person-

---

[9]Petitioner's admissions in his reply filed Apr. 1, 1983, pars. 9(b) and 10(a).

[10]Although the facts in each case are not identical, they are sufficiently similar to be classified as parts of a single protester group.

[11]For the 1980 taxable year, 9 of the 10 tampered forms had "Non-taxable receipts" inserted on line 24, and "Eisner v. Macomber, 252 U.S. 189," inserted on line 25. In two places in the left margin of these "forms" the word "receipts" replaced the word "income." On lines 9, 13, 19, and 21, the word "gain" replaced "income," and on line 22, the word "income" had been deleted. Five of the 1980 tampered forms had the same changes as above, except that line 25 had not been changed. One tampered form for the 1980 year was a copyrighted 1980 Eugene J. May "form" that placed "Non-taxable receipts" on line 23, and inserted cases on lines 24 through 29. Numerous other changes were made by replacing the word "income" with "receipts."

[12]For the 1981 year, 11 of the 13 tampered forms had inserted "Non-taxable receipts" on line 23, replaced the word "income" in the left margin of the form with "receipts," replaced the word "income" on lines 8a, 11, 18, and 20, with the word "gain," and deleted the word "income" from line 21. The remaining 2 "forms" for the 1981 year placed "Non-taxable receipts" on line 22, were copyrighted Eugene J. May 1981 "forms," and had numerous other changes similar to those in the 1980 Eugene J. May "forms."

al data. The remaining case contained a handwritten, individually composed petition. In cases in which replies or responses to respondent's motion for summary judgment were filed, all but one were the same format and language, with minor deviations to suit the petitioners in each case. It is abundantly clear that these docketed cases and documents represent a coordinated protest effort—an attempt to obtain refunds where employers had withheld against amounts paid, as well as to drain further the limited resources of this Court with these frivolous contentions.

The Internal Revenue Service has been forced to develop special procedures[13] to handle tampered forms like those in the group referred to above. The tampered forms are also referred to as "Eisner v. Macomber returns" because *Eisner v. Macomber*, 252 U.S. 189 (1920), is usually cited either in the form or in the literature attached.[14] From a cursory look, they appear to be official Forms 1040, but upon closer inspection, definitively are not. Internal Revenue Service employees must identify and then withdraw these from the normal processing channels, and gather and deliver them to a special team for review. After such review, the person who submitted such a tampered return is often, but not always, informed that it is not acceptable as a return because it does not comply with the Internal Revenue Code. Petitioner was so informed by a letter dated July 16, 1982, stating that the tampered form was "not

---

[13]In the transcript of the hearing on Feb. 22, 1984, counsel for respondent brought to our attention information regarding these special procedures. Reference was made to affidavits filed in certain cases in the above-mentioned group. We take judicial notice of an affidavit of Marjorie A. Wyman, filed in *Michael J. Blackwell*, docket No. 26384–82.

[14]We note that a similar type of return was filed by a Robert D. Beard of Carleton, Mich., and in *Beard v. United States*, 580 F. Supp. 881 (E.D. Mich. 1984), a sec. 6702 civil penalty of $500 was sustained. The court in that case granted a motion to dismiss without an oral argument on the basis of papers filed. Petitioner filed a tampered form and made these same arguments concerning "receipts," "non-taxable receipts," and the "equal exchange" theory. The purported "return" was found frivolous on its face and petitioner was found liable for the penalty pursuant to sec. 6702, a section that imposes a civil penalty for the filing of a frivolous "return."

A similar type of return as that used by petitioner was again at issue in the case of *United States v. May*, 555 F. Supp. 1008 (E.D. Mich. 1983). The U.S. District Court for the Eastern District of Michigan has recently enjoined May from engaging in conduct which interferes with the proper administration of the Internal Revenue laws. Included was conduct by Mr. May relating to the *Eisner v. Macomber* returns.

We also note that the "Non-taxable receipts" deduction has been used by taxpayers in the Michigan area on other occasions. *Cannon v. United States*, an unreported case (E.D. Mich. 1983, 52 AFTR 2d 83-6348, 83–2 USTC par. 9699); *Corcoran v. United States*, an unreported case (E.D. Mich. 1983, 84–1 USTC par. 9148); *Ervans v. United States*, an unreported case (E.D. Mich. 1984, 53 AFTR 2d 84-772, 84–1 USTC par. 9300).

acceptable as an income tax return because it does not contain information required by law, and it does not comply with Internal Revenue Code requirements."

ULTIMATE FINDINGS OF FACT

Petitioner actually received $24,401.89 from his employer as wages during the 1981 taxable year. The only documents he submitted for the 1981 taxable year were the tampered form and its accompanying memorandum. Petitioner has extensively studied the rules and regulations regarding the income tax laws in addition to income tax cases and, thus, his actions were the product of informed deliberation.

OPINION

*Summary Judgment Issue*

The threshold issue is whether a motion for summary judgment is appropriate in this case. We conclude that it is. Rule 121 provides that a party may move for summary judgment upon all or any part of the legal issues in controversy "if the pleadings * * * and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). The summary judgment procedure is available even though there is a dispute under the pleadings if it is shown through materials in the record outside the pleadings that no genuine issue of material fact exists.[15] In passing upon such a motion, the factual materials presented "must be viewed in the light most favorable to the party opposing the motion." *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982); *Elkins v. Commissioner*, 81 T.C. 669 (1983).

Since respondent is the movant with respect to this motion, he has the burden of proving there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. There is no dispute among the parties as a factual matter that petitioner received his Form W-2 from his

---

[15]Such outside materials may consist of affidavits, interrogatories, admissions documents, or other materials which demonstrate the absence of such an issue of fact despite the pleadings. See Note to Rule 121(a), 60 T.C. 1127 (1973).

employer reflecting the $24,401.89 amount. The only justiciable error that petitioner alleges in his reply and response is that such amounts are not taxable, a legal issue. Petitioner does not question and thereby concedes to the authenticity of the respondent's evidence attached as exhibits to a submitted affidavit,[16] i.e.: the 1979 tax return and the tampered form at issue. He admits in his reply that this is the only form filed for the 1981 taxable year. That petitioner is familiar with the Federal income tax statutes, regulations, and case law is confirmed by the frequent citation of the Federal income tax cases, statutes, rules, and regulations in the documents filed by petitioner in this Court. The summary judgment pleadings, affidavits, and exhibits establish that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.

The burden of proof is upon the petitioner with respect to the deficiency set forth in the statutory notice and upon the respondent as to the issues raised in the answer. *Welch v. Helvering*, 290 U.S. 111 (1933); *Nicholson v. Commissioner*, 32 B.T.A. 977 (1935), affd. 90 F.2d 978 (8th Cir. 1937); Rule 142 (a).

## *Frivolous Contentions*

We first dispose of petitioner's two frivolous contentions. Respondent maintains that the amounts petitioner received for services performed as reflected in the 1981 Form W-2 are taxable as gross income to petitioner for the year in which he received such amounts. There is no doubt that such amounts are taxable as gross income. Sec. 61; *Eisner v. Macomber, supra* at 207; *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955); *Rowlee v. Commissioner*, 80 T.C. 1111 (1983).

Petitioner received wages for the taxable year of $24,401.89, and thus was required to file a Federal income tax return for that year. Sec. 6012 (a)(1)(A). Section 6072 provides that in the case of returns under section 6012, returns made on the basis of the calendar year shall be filed on or before the 15th day of April following the close of the calendar year. It is clear that petitioner had a duty to file a return. The crucial issue is whether respondent must accept this tampered form in satisfaction of that duty.

---

[16]See note 5 *supra.*

Petitioner, in his reply, asserts that he is entitled to a trial by jury for all issues contained in this case. It is well settled that in a suit concerning Federal tax liability, no right to a jury trial exists under the Seventh Amendment guaranteeing a jury trial on common law actions. *Cupp v. Commissioner*, 65 T.C. 68 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977). Thus, we find taxpayer is not entitled to a jury trial.

## *Failure To File*

Respondent alleges an addition to tax under section 6651 (a)(1) for failure to file a Federal income tax return for taxable year 1981. Section 6651 (a)(1) provides for an addition to tax if a taxpayer fails to file a timely return unless such failure is due to reasonable cause and not due to willful neglect. Respondent maintains that the tampered form submitted by petitioner was not a return within the meaning of sections 6012, 6072, and 6651 (a)(1), that it will not be accepted as such (and was not accepted in this case), and thus petitioner is liable for an addition under section 6651 (a)(1). We agree.

The general requirements of a Federal income tax return are set forth in section 6011 (a), in relevant part as follows:

When required by regulations prescribed by the Secretary any person made liable for any tax * * * shall make a return or statement *according to the forms* and *regulations* prescribed by the Secretary. [Emphasis added.]

Regulations implementing this legislative mandate provide:

(a) *General rule.* Every person subject to any tax, or required to collect any tax, under subtitle A of the Code, shall make such returns or statements as are required by the regulations in this chapter. The return or statement shall include therein the information required by the applicable regulations or forms.[17]

(b) *Use of prescribed forms.* Copies of the prescribed return forms will so far as possible be furnished taxpayers by district directors. A taxpayer will not be excused from making a return, however, by the fact that no return form has been furnished to him. Taxpayers not supplied with the proper forms should make application therefor to the district director in ample time to have their returns prepared, verified, and filed on or before the due date with the internal revenue office where such returns are required to be filed.

---

[17]Sec. 1.6011–1(a), Income Tax Regs. General requirement of return, statement, or list. These regulations specifically apply to persons subject to any tax under subtitle A of the Code.

Each taxpayer should carefully prepare his return and set forth fully and clearly the information required to be included therein. Returns which have not been so prepared will not be accepted as meeting the requirements of the code. * * *[18]

The statutory grant of authority to the Treasury requires that taxpayers make a return or statement according to the forms and regulations prescribed by the Secretary of the Treasury. These regulations mandate the use of the proper official form, except as noted below.[19] The U.S. Supreme Court in the case of *Commissioner v. Lane-Wells Co.*, 321 U.S. 219 (1944), has recognized this mandate in stating:

Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the taxpayer to comply. It thus implements the system of self assessment which is so largely the basis of our American scheme of income taxation. The purpose is not alone to get tax information in some form but also to get it with such *uniformity, completeness,* and *arrangement* that the physical task of handling and verifying returns may be readily accomplished. [321 U.S. at 223; emphasis added.]

This discretionary authority outlined in the regulations at section 1.6011–1, Income Tax Regs., has also been recognized in the case of *Parker v. Commissioner*, 365 F.2d 792 (8th Cir. 1966). Although the facts of that case are distinguishable from the instant case, the court did note that—

Taxpayers are required to file timely returns on forms established by the Commissioner. * * * The Commissioner is certainly not required to accept any facsimile the taxpayer sees fit to submit. If the Commissioner were obligated to do so, the business of tax collecting would result in insurmountable confusion. * * * [365 F.2d at 800.]

For years, the only permissible exception to the use of the official form has been the permission, granted from time to time to tax return preparers by the Internal Revenue Service, to reproduce and vary very slightly the official form pursuant to the Commissioner's revenue procedures. These revenue

---

[18]Sec. 1.6011–1(b), Income Tax Regs. Although not applicable to the facts of the instant case, the regulations also provide for the filing of a timely tentative return when the official form is not available, provided that without unnecessary delay such a tentative return is supplemented by a return made on the proper form.

[19]Respondent could have argued that the Commissioner's rejection of the tampered form as a return was a proper exercise of his discretion under these regulations. Since he did not, we do not address this argument.

procedures require advance approval of a specially designed form prior to use as well as following the guidelines for acceptable changes in the form. The philosophy of the revenue procedure is and has been required forms to conform in material respects to the official form for the obvious reasons of convenience and processing facilitation but also to be clearly distinguishable from the official form, thereby removing the opportunity for deceit. Portions of the revenue procedure in effect and applicable to the facts of this case are printed in the appendix hereto at pages 782–783.

On the tampered form, various margin and item captions, in whole or in part, have been deleted and most replaced with language fabricated by the petitioner. These changes were not in conformity with the Revenue Procedure[20] rules at section 5.01(2)(a)(1) requiring each substitute or privately designed form to follow the design of the official form as to *format*, *arrangement*, *item caption*, line numbers, line references, and sequence. Also, Revenue Procedure section 3.04(1) and (2) prohibits any change of any Internal Revenue Service tax form, graphic or otherwise, or the use of a taxpayer's own (nonapproved) version without prior approval from the Internal Revenue Service. Petitioner made no attempt to obtain such approval. Additionally, petitioner was required by Revenue Procedure section 6.01 to remove the Government Printing Office symbol and jacket numbers, and in such space (using the same type size), print the employer identifying number of the printer or the Social Security number of the form designer. Petitioner did not remove the symbol and numbers and did not insert in their place his appropriate number. The tampered form deceptively bore the markings of an official form. Section 8.01, Revenue Procedure rules, prohibits the filing of reproductions of official forms and substitute forms that do not meet the requirements of the procedure. The only filing made by petitioner for the 1981 taxable year was the nonconforming tampered form.

Petitioner's prohibited tampering with the official form, the net effect of which is the creation of a zero tax liability, adversely affects the form's useability by respondent. The tampered form, because of these numerous irregularities,

---

[20]Rev. Proc. 80–47, 1980–2 C.B. 782. The current version of this revenue procedure is Rev. Proc. 84–9, I.R.B. 1984–7, 14.

must be handled by special procedures and must be withdrawn from normal processing channels. There can be no doubt that due to its lack of conformity to the official form, it substantially impedes the Commissioner's physical task of handling and verifying tax returns. Under the facts of this case, taxpayer has not made a return *according to the forms and regulations* prescribed by the Secretary as required by section 6011(a). The rejection of the tampered form was authorized by the regulations for failure to conform to the revenue procedure. But whether or not rejected in this case, the question remains—Is the Internal Revenue Service nevertheless required to accept and treat as a tax return this tampered form? We conclude that it is not.

There have been factual circumstances in which the courts have treated as returns, for statute of limitations purposes, documents which did not conform to the regulations as prescribed by section 6011(a). Since the instant case is one of first impression, we will consider these cases that were decided on the statute of limitations issue because a return that is sufficient to trigger the running of the statute of limitation must also be sufficient for the purpose of section 6651(a)(1).

The Supreme Court test to determine whether a document is sufficient for statute of limitations purposes has several elements: First, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury.

It is important to consider the factual circumstances under which this test has been applied. In *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930), at issue was whether the filing of a "tentative return" or the later filing of a "completed return" triggered the statute of limitations. A corporation had filed a tentative return along with a request for an extension of time to file a return which was later filed. The Court found that the filing of the tentative return was not in the nature of a "list," "schedule," or "return" required by tax statutes. It was designed to meet a peculiar exigency and "Its purpose was to secure to the taxpayer a needed extension of time for filing the required return, without defeating the Government's right to prompt payment of the first installment

[of tax]." The statute plainly manifested a purpose that the period of limitations was to commence only when the taxpayer supplied the required information *in the prescribed manner*— the completed return.

The Court recognized that the filing of a return that is defective or incomplete may under some circumstances be sufficient to start the running of the period of limitation. However, such a return must purport to be a specific statement of the items of income, deductions, and credits in compliance with the statutory duty to report information and "*to have that effect it must honestly and reasonably be intended as such.*" (Emphasis added.) Thus, the filing of the tentative return was not a return to start the period of limitation running.

This issue of whether the document was a return for the statute of limitation purposes was again before the Court in *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934). Justice Cardozo, speaking for the Court, said:

Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such * * * and evinces an honest and genuine endeavor to satisfy the law. This is so even though at the time of filing the omissions or inaccuracies are such as to make amendment necessary. [*Zellerbach Paper Co. v. Helvering, supra.* at 180. Citations omitted.]

The most recent Supreme Court reaffirmation of the test articulated in *Florsheim* and *Zellerbach* is found in *Badaracco, Sr. v. Commissioner*, 464 U.S.___ (1984). The issue was whether the filing of a nonfraudulent amended return following a fraudulent original return started the running of the statute of limitations. One of the taxpayers' arguments was that their original return, to the extent it was fraudulent, was a nullity for purposes of the statute of limitations, relying upon *Zellerbach*. The Supreme Court noted that the *Badaracco* returns "purported to be returns, were sworn to as such and appeared on their faces to constitute endeavors to satisfy the law." Although fraudulent, these returns were not nullities under the *Zellerbach* test.

The tampered form before us may purport to be a return in that it may "convey, imply or profess outwardly" to be a return. Black's Law Dictionary 1112 (rev. 5th ed. 1979) It was also sworn to. But it does not reflect an endeavor to satisfy the

law. It in fact makes a mockery of the requirements for a tax return, both as to form and content. Whether or not the form contains sufficient information to permit a tax to be calculated is not altogether clear. We have held that the attachment of a Form W-2 does not substitute for the disclosure on the return, itself, of information as to income, deductions, credits, and tax liability. *Reiff v. Commissioner*, 77 T.C. 1169 (1981). Ignoring the Form W-2, the tampered form does show an amount of "Wages, salaries, tips, etc.," but with the margin description altered from "Income" to "Receipts." Similarly, in place of a deduction, the form has an amount for "Non-taxable receipts." Thus, to compute a tax from this tampered form, one must effectively ignore the margin and line descriptions, imagining instead the correct ones from an official Form 1040, or one must simply select from the form, including the Form W-2, that information which appears to be applicable and correct, and from the information so selected, irrespective of its label, compute the tax. We do not believe such an exercise is what the U.S. Supreme Court had in mind in *Commissioner v. Lane-Wells Co., supra* at 222–223, and *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 309 (1940).

The tampered form here is a conspicuous protest against the payment of tax, intended to deceive respondent's return-processing personnel into refunding the withheld tax. Since such intentional tampering could go undetected in computer processing, respondent was forced to develop and institute special procedures for handling such submissions. The critical requirement that there must be an honest and reasonable attempt to satisfy the requirements of the Federal income tax law clearly is not met. As the Court of Appeals of the Seventh Circuit has said,

In the tax protestor cases, it is obvious that there is no "honest and genuine" attempt to meet the requirements of the code. In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information. [*United States v. Moore*, 627 F.2d 830, 835 (7th Cir. 1980).]

The tampered form is not in conformity with the requirements in section 6011(a) or section 1.6011–1(a) and (b), Income Tax Regs., and it is not a return under the judicial line of authority set forth above.

Section 6651(a)(1) provides that an addition to tax is due if a taxpayer fails to timely file a return unless such failure is due to reasonable cause and not due to willful neglect. The evidence is clear that petitioner's actions were deliberate, intentional, and in complete disregard of the statute and respondent's regulations. Petitioner made no attempt to file an authentic tax return, as he did for 1979, and offers no excuse for his failure to do so. He must accept the consequences of actions knowingly taken. See *Reiff v. Commissioner, supra* at 1180. Respondent has met his burden of proving that petitioner did not file a return for sections 6011, 6012, 6072, and 6651(a)(1) purposes, and thus an addition to tax is due.

## *Intentional Disregard of Rules and Regulations*

Respondent, in the answer, alleged an addition to tax under section 6653(a) in that all or part of petitioner's underpayment of income tax was due to petitioner's negligence or intentional disregard of rules and regulations. It was alleged, further, that the tampered form filed by petitioner was not a return as required by section 6011, and that without reasonable cause and due to willful neglect, petitioner failed to file a Federal income tax return for the year 1981 as required by section 6011.

When a taxpayer has not filed a return for the taxable year, the underpayment is defined as "The amount of the tax imposed by subtitle A * * * if a return was not filed on or before the last date (determined with regard to any extension of time) prescribed for filing such return."[21] In this case, we have found petitioner has willfully failed to file a return for the 1981 year. Additionally, we note petitioner is aware of the income statutes, regulations, and relevant case law such as *Eisner v. Macomber*, 252 U.S. 189 (1920), as shown by his petition and the memorandum filed with the 1981 tampered form. Furthermore, petitioner has shown that he knows of his duty and how to properly report his income on his 1979 return. We conclude that petitioner's underpayment of tax was due to intentional disregard of rules and regulations.

[21]Sec. 6653(c)(1) and sec. 301.6653–1(c)(1), Proced. & Admin. Regs. See *Estate of Haseltine v. Commissioner*, T.C. Memo. 1976–278.

## Proceeding Instituted Merely for Delay

Respondent has requested that damages be awarded under section 6673 for instituting a proceeding before the Tax Court merely for delay. For cases commenced in this Court before January 1, 1983, the maximum damages that may be awarded is an amount not in excess of $500.[22] Petitioner, in his reply,[23] recognizes that this Court has on many occasions found the argument that wages are nontaxable, frivolous, and groundless. We have warned taxpayers that if they continue to bring frivolous cases, serious consideration would be given to imposing damages under section 6673. See, e.g., *Hatfield v. Commissioner*, 68 T.C. 895, 899–900 (1977). Petitioner knowingly instituted a frivolous proceeding merely for the purposes of delay. Discussions of the reasons for awarding such damages are set forth in *Grimes v. Commissioner*, 82 T.C. 235 (1984); *Abrams v. Commissioner*, 82 T.C. 403 (1984); *Perkins v. Commissioner*, T.C. Memo. 1983–474. We see no reason to add to those discussions and hereby award the United States damages of $500.

Accordingly, we grant the motion for summary judgment.

> *An appropriate order and decision will be entered.*

Reviewed by the Court.

DAWSON, FAY, SIMPSON, STERRETT, GOFFE, WILES, WILBUR, NIMS, PARKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, and JACOBS, *JJ.*, agree with the majority opinion.

---

[22]Sec. 6673, as in effect prior to amendment by sec. 292(b), Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97–248, 96 Stat. 574, provided as follows:

"Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax."

[23]See reply at par. 9(b).

APPENDIX

Rev. Proc. 80–47

SECTION 1. PURPOSE

This revenue procedure states the requirements of the Internal Revenue Service relating to the preparation of acceptable reproductions and private design and printing of substitute federal tax return forms (*i.e.*, Forms 1040, 1040A, 1120, 940, 941, etc.) and related forms (schedules) for filing purposes in place of the official forms and schedules.

SEC. 2. DEFINITIONS

.01 Definitions Used in This Publication (Relating to Tax Forms).

1 *Substitute Form.* A tax form or related form or schedule that differs in any way from the official version and is intended to replace the entire form that is printed and distributed by the Service. This term also covers those approved substitute formats and forms described in this revenue procedure. (A photocopy of an official form or a copy produced from an unchanged reproduction proof, supplied by the Service, is not a substitute form.)

\*　　\*　　\*　　\*　　\*　　\*　　\*

SEC. 3. SUMMARY OF CONTENTS

.01 MESSAGE TO TAX RETURN PREPARERS

IF YOU PLAN TO CHANGE OR MODIFY *ANY* TAX FORMS, YOU MUST FOLLOW INTERNAL REVENUE PROCEDURES AND, IN MOST CASES, *YOU MUST GET OFFICIAL APPROVAL BEFORE USING SUBSTITUTE FORMS. THE SERVICE IS CONTINUING A NATIONWIDED PROGRAM TO IDENTIFY AND CONTACT TAX RETURN PREPARERS USING UNAPPROVED FORMS*

\*　　\*　　\*　　\*　　\*　　\*　　\*

.04 THINGS YOU *CANNOT* DO TO INTERNAL REVENUE SERVICE PRINTED TAX FORMS.

1 *You cannot* change any Internal Revenue Service tax form or use your own (non-approved) version, unless permitted by revenue procedures without prior Service approval.

2 *You cannot* change any of the graphics on Forms 1040 and 1040A (except those specified in revenue procedures) without prior approval from the Service.

\*　　\*　　\*　　\*　　\*　　\*　　\*

SEC. 5. APPROVAL INFORMATION

.01 *Approvals.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

2 *Changes to Tax Forms.* * * *

\*    \*    \*    \*    \*    \*    \*

(a) THE GUIDELINES FOR PRIVATELY DESIGNED AND PRINTED TAX FORMS ARE AS FOLLOWS:
(1) Each form must follow the design of the official form as to format, arrangement, item caption, line numbers, line references and sequence.

\*    \*    \*    \*    \*    \*    \*

SEC. 6. PHYSICAL ASPECTS AND REQUIREMENTS
.01 *Printing Medium.* * * *
1 *Remove Government Printing Office Symbol.* When privately printing a tax form, the Government Printing Office symbol and jacket numbers must be removed, and in its place (using the same type size) *print the Employer Identifying Number (EIN) of the printer or the Social Security Number (SSN) of the form designer.*

\*    \*    \*    \*    \*    \*    \*

.09 *Marginal Printing—Limited Area.* You may print your logo, company or firm name, identifying and collation symbols, etc., in the *top left margin* of any Service form. The area you may use extends vertically from the top of the form's title designation to the top edge of the form and horizontally 3½ inches from the left edge. *No printing is permitted in the top right margin.* With the exception of the actual tax return form (*i.e.*, Forms 1040, 1040A, 1120, 940, 941, etc.) you may also print in the left vertical and bottom left margins. The bottom left margin you may use extends 3½ inches from the left edge of the form.

\*    \*    \*    \*    \*    \*    \*

SEC. 8. OTHER CONSIDERATIONS
.01 Reproductions of official forms and substitute forms which do not meet the requirements of this revenue procedure may not be filed instead of the official forms and schedules.

-----

NIMS, *J.*, concurring: I write this concurring opinion only to expressly dissociate myself from the views expressed in a concurring and dissenting opinion in support of petitioner's travesty tax return. I find it impossible to suppose that the Supreme Court intended its reasoning in *Badaracco* to be applied so totally out of context as to give intellectual aid and comfort to petitioner and others like him, whose so-called

returns on their face make clear a concerted effort to disrupt the tax system.

I fully agree with the reasoning and the result reached in the majority opinion.

STERRETT, WILES, HAMBLEN, COHEN, and CLAPP, *JJ.*, agree with this concurring opinion.

---

CHABOT, *J.*, concurring in part and dissenting in part: I agree with the majority's holdings as to the following issues:

(1) Petitioner's wages are income, subject to tax, and he is not entitled to an offsetting deduction for "Non-taxable receipts".

(2) Petitioner intentionally disregarded respondent's rules and regulations in claiming the unwarranted deduction for "Non-taxable receipts", and so is liable for an addition to tax under section 6653(a).

(3) Petitioner is liable for damages under section 6673, for instituting proceedings in the Court merely for delay. (When he filed the petition in the instant case, the only matter in dispute was the deficiency, no additions to tax or damages having yet been asserted. In the words attributable to a sports figure in the 1930's, petitioner "should of stood in bed".)

(4) Petitioner is not entitled to a jury trial.

From the majority's determination to grant summary judgment that the Form 1040 filed by petitioner was not a tax return, I respectfully dissent.

In *Badaracco v. Commissioner*, 464 U.S. \_\_\_\_, \_\_\_\_ (1984), the Supreme Court confronted the contention of the taxpayers therein that the first documents they had filed "were 'nullities' for the statute of limitations purposes." In the course of its analysis, the Supreme Court stated as follows:

a document which on its face plausibly purports to be in compliance, and which is signed by the taxpayer, is a return despite its inaccuracies. * * *

*Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934), which petitioners cite, affords no support for their argument. The Court in *Zellerbach* held that an original return, despite its inaccuracy, was a "return" for limitations purposes, so that the filing of an amended return did not start a new period of limitations running. In the instant cases, the original returns similarly purported to be returns, were sworn to as such, and appeared on their faces

to constitute endeavors to satisfy the law. Although those returns, in fact, were not honest, the holding in *Zellerbach* does not render them nullities.

An examination of the Form 1040 in question (see Appendix, pp. 788–789 *infra*) shows the following: (1) It is a document which on its face plausibly purports to be in compliance with the law; (2) it is signed by the taxpayer (under penalties of perjury); (3) it does not make believe that only gold and silver coins need be reported; (4) it is not chock-full of refusals to provide information (indeed, it provides all the information requested as to petitioner's "Wages, salaries, tips, etc.", and respondent does not contend that petitioner had any other reportable income); (5) the income is reported on the correct line of the return; (6) an unwarranted deduction is reported on a line reserved for deductions; and (7) apparently the Form 1040 includes everything respondent needed in order to determine petitioner's income tax liability. Compare the instant case with *Reiff v. Commissioner*, 77 T.C. 1169, 1177–1179 (1981), and the cases cited therein. Nothing in the majority's opinion or on the face of the Form 1040 shows that respondent is led into error *because of the change in the text of any line on the Form 1040.*

I would hold that the document filed by petitioner constitutes a tax return under the standards adopted by the Supreme Court, as most recently articulated in *Badaracco v. Commissioner, supra.*

We deal with this matter in the context of respondent's motion for summary judgment, a context in which, as the majority concede (p. 772 *supra*), "the factual materials presented 'must be viewed in the light most favorable to the party opposing the motion.' " The majority fail to make a finding of fact that any problem described in their opinion results from any of the eight alterations petitioner made on his Form 1040, whether the alterations are taken singly or in combination.

The majority's opinion, at pages 776–777 *supra*, states that petitioner's alteration of the Form 1040 had "the net effect of * * * the creation of a zero tax liability" and that "because of these numerous irregularities, [it had to] be handled by special procedures and must be withdrawn from normal processing channels." This misdescribes the situation. Both the zero tax liability, and the requirement of special procedures, result from the unwarranted deduction. These problems would ex-

ist—because of the deduction—even if there were no alterations to the Form 1040.

On page 779 of their opinion, the majority state that—

to compute a tax from this tampered form, one must effectively ignore the margin and line descriptions, imagining instead the correct ones from an official Form 1040, or one must simply select from the form, including the Form W-2, that information which appears to be applicable and correct, and from the information so selected, irrespective of its label, compute a tax.

The Form 1040 in question shows the necessary income information, and does so on the correct line, and that line has not been altered. This information is in accord with the Form W-2 (and not in conflict with it, as was the case in *Reiff v. Commissioner, supra,* relied on by the majority). There is no need to imagine the correct margin and line descriptions from an official Form 1040 because respondent's problems are no different, with the altered Form 1040, than they would be with an official Form 1040.

The majority emphasize (p. 775 *supra*) the explanation by the Supreme Court in *Commissioner v. Lane-Wells Co.,* 321 U.S. 219, 223 (1944), that "The purpose is not alone to get tax information in some form but also to get it with such *uniformity, completeness,* and *arrangement* that the physical task of handling and verifying returns may be readily accomplished." I agree that we must follow the Supreme Court's analysis in applying section 6651(a)(1). However, the record in the instant case does not show—and the majority have not found—that the *alterations to the Form 1040* (as distinguished from the unwarranted deduction) interfered in any manner with the accomplishment of the physical task of handling and verifying income tax returns.

I understand and share the majority's frustration at having to deal with frivolous arguments such as the "equal exchange" theory. However, this Court should not confuse the law as to what is a tax return, just to punish a particular individual or even a class of individuals. The Congress has given the courts more effective tools. We have used these tools to impose damages of up to $5,000 for frivolous or groundless actions. (Sec. 6673.) The District Courts have used these tools to uphold penalties of $500 for frivolous filings. (Sec. 6702.) As the majority note (p. 771 note 14 *supra*), the injunction has been

used to prevent conduct which interferes with proper administration of the Internal Revenue laws. (Secs. 7402(a), 7407.) When civil fraud is found, the sanction therefor now includes an additional amount under section 6653(b)(2). The criminal fraud fine has been increased from a maximum of $10,000 to a maximum of $100,000 ($500,000 in the case of a corporation). (Sec. 7201.)

I would hold that petitioner's Form 1040 is a tax return. Since there is no finding that it was filed late, I would not impose an addition to tax under section 6651(a)(1). From the majority's contrary holding, I respectfully dissent.

SWIFT, *J.*, agrees with this concurring and dissenting opinion.

## APPENDIX

The Form 1040 filed by petitioner is as follows (the oval markings having been added by the author of this opinion in order to indicate the places where the form was altered):

| Form **1040** | Department of the Treasury—Internal Revenue Service **U.S. Individual Income Tax Return** | **1981** (8) | | OMB No 1545-0074 |
|---|---|---|---|---|

For the year January 1—December 31, 1981, or other tax year beginning , 1981, Ending . 19 .

| Use IRS label. Otherwise, please print or type. | Your first name and initial (if joint return, also give spouse's name and initial) Robert D. | Last name Beard | Your social security number 362 : 58 : 6464 |
|---|---|---|---|
| | Present home address (Number and street, including apartment number, or rural route) 11150 Telegraph Rd., Lot 30 Hudson | | Spouse's social security no. 385 : 62 : 6757 |
| | City, town or post office, State and ZIP code Carleton, Michigan 48117 | Your occupation ► Laborer Spouse's occupation ► Laborer | |

**Presidential Election Campaign** ► Do you want $1 to go to this fund? . . . . . . . . . . . . . . . x Yes / No
If joint return, does your spouse want $1 to go to this fund? . . . Yes / No
Note: Checking "Yes" will not increase your tax or reduce your refund.

**Filing Status**
Check only one box.

1. Single
2. Married filing joint return (even if only one had income)
3. [x] Married filing separate return. Enter spouse's social security no. above and full name here ► Karen L.
4. Head of household (with qualifying person). (See page 6 of Instructions.) If he or she is your unmarried child, enter child's name ►
5. Qualifying widow(er) with dependent child (Year spouse died ► 19 ). (See page 6 of Instructions.)

**Exemptions**
Always check the box labeled Yourself.
Check other boxes if they apply.

For Privacy Act and Paperwork Reduction Act Notice, see Instructions.

6a [x] Yourself ☐ 65 or over ☐ Blind
b ☐ Spouse ☐ 65 or over ☐ Blind

Enter number of boxes checked on 6a and b ► 1

c First names of your dependent children who lived with you ►
Enter number of children listed on 6c ►

| d Other dependents: (1) Name | (2) Relationship | (3) Number of months lived in your home | (4) Did dependent have income of $1,000 or more? | (5) Did you provide more than one-half of dependent's support? |
|---|---|---|---|---|
| | | | | |
| | | | | |

Enter number of other dependents ►
Add numbers entered in boxes above ► 1

e Total number of exemptions claimed . . . . . . . . . . . . . . . . . . . . .

**(Receipts)**
Please attach Copy B of your Forms W–2 here.
If you do not have a W–2, see page 5 of Instructions.

| 7 Wages, salaries, tips, etc. . . . . . . . . . . . . . . . | | 7 | 24,401 | 89 |
|---|---|---|---|---|
| 8a Interest (gain) (attach Schedule B if over $400 or you have any All-Savers interest) . . . . | 8a | 0 00 | | |
| b Dividends (attach Schedule B if over $400) . . . . . . | 8b | 0 00 | | |
| c Total. Add lines 8a and 8b . . . . . . . . . . . . . . | 8c | 0 00 | | |
| d Exclusion (See page 9 of Instructions) . . . . . . . . | 8d | | | |
| e Subtract line 8d from line 8c (but not less than zero) . . . | | 8e | 0 | 00 |
| 9 Refunds of State and local income taxes (do not enter an amount unless you deducted those taxes in an earlier year—see page 9 of Instructions) . . . . . . . . | | 9 | 0 | 00 |
| 10 Alimony received . . . . . . . . . . . . . . . . . . . . | | 10 | 0 | 00 |
| 11 Business (gain) or (loss) (attach Schedule C) . . . . . . . . . . . . . . . . ► | | 11 | 0 | 00 |
| 12 Capital gain or (loss) (attach Schedule D) . . . . . . . . . | | 12 | 0 | 00 |
| 13 40% of capital gain distributions not reported on line 12 (See page 9 of Instructions) . | | 13 | 0 | 00 |
| 14 Supplemental gains or (losses) (attach Form 4797) . . . . . . | | 14 | 0 | 00 |
| 15 Fully taxable pensions and annuities not reported on line 16 . . . . . . . . . . . | | 15 | 0 | 00 |
| 16a Other pensions and annuities. Total received . . . . . | 16a | | | |
| b Taxable amount, if any, from worksheet on page 10 of Instructions . . . . . . . . . | | 16b | 0 | 00 |
| 17 Rents, royalties, partnerships, estates, trusts, etc. (attach Schedule E) . . . . . . | | 17 | 0 | 00 |
| 18 Farm (gain or (loss) (attach Schedule F) . . . . . . . . . . . . . . . . . . . ► | | 18 | 0 | 00 |
| 19a Unemployment compensation (insurance). Total received | 19a | | | |
| b Taxable amount, if any, from worksheet on page 10 of Instructions . . . . . . . . . | | 19b | 0 | 00 |
| 20 Other (gain) (state nature and source—see page 11 of Instructions) ► | | 20 | 0 | 00 |
| 21 Total. Add amounts in column for lines 7 through 20 . . . . . . . . . . ► | | 21 | 24,401 | 89 |

Please attach check or money order here

**Adjustments to (Receipts)**
(See Instructions on page 11)

| 22 Moving expense (attach Form 3903 or 3903F) . . . . . | 22 | | |
|---|---|---|---|
| 23 Non-taxable receipts . . . . . . . . . . . . . . | 23 | 24,401 89 | |
| 24 Payments to an IRA (enter code from page 11 ........) . | 24 | | |
| 25 Payments to a Keogh (H.R. 10) retirement plan . . . . | 25 | | |
| 26 Interest penalty on early withdrawal of savings . . . | 26 | | |
| 27 Alimony paid . . . . . . . . . . . . . . . . . . . | 27 | | |
| 28 Disability income exclusion (attach Form 2440) . . . . | 28 | | |
| 29 Other adjustments—see page 12 ► | 29 | | |
| 30 Total adjustments. Add lines 22 through 29 . . . . . . . . . . . . . . . . . . ► | 30 | 24,401 | 89 |

**Adjusted Gross Income**

31 Adjusted gross income. Subtract line 30 from line 21. If this line is less than $10,000, see "Earned Income Credit" (line 57) on page 15 of Instructions. If you want IRS to figure your tax, see page 3 of Instructions . . . . . . . . ► | 31 | 0 | 00

Form 1040 (1981)                                                                                      Page 2

| | | | | |
|---|---|---|---|---|
| **Tax Compu-tation** (See Instructions on page 12) | 32a | Amount from line 31 *(adjusted gross income)* . . . . . . . . . . . . . . . . . . . | 32a | 0 00 |
| | 32b | If you do not itemize deductions, enter zero . . . . . . . . . . . . . . . . . . . | 32b | 0 00 |
| | | If you itemize, complete Schedule A (Form 1040) and enter the amount from Schedule A, line 41 . . . | | |
| | | Caution: If you have unearned income and can be claimed as a dependent on your parent's return, check here ▶ ☐ and see page 12 of the Instructions. Also see page 12 of the Instructions if: | | |
| | | • You are married filing a separate return and your spouse itemizes deductions, OR | | |
| | | • You file Form 4563, OR | | |
| | | • You are a dual-status alien. | | |
| | 32c | Subtract line 32b from line 32a . . . . . . . . . . . . . . . . . . . | 32c | 0 00 |
| | 33 | Multiply $1,000 by the total number of exemptions claimed on Form 1040, line 6e . . | 33 | 1,000 00 |
| | 34 | Taxable Income. Subtract line 33 from line 32c . . . . . . . . . . . . . . | 34 | 0 00 |
| | 35 | Tax. Enter tax here and check if from ☒ Tax Table, ☐ Tax Rate Schedule X, Y, or Z, ☐ Schedule D, ☐ Schedule G, or ☐ Form 4726 . . . . . . . . | 35 | 0 00 |
| | 36 | Additional Taxes. (See page 13 of Instructions.) Enter here and check if from ☐ Form 4970, ☐ Form 4972, ☐ Form 5544, or ☐ Section 72(m)(5) penalty tax . . . . . . . . . . | 36 | 0 00 |
| | 37 | Total. Add lines 35 and 36 . . . . . . . . . . . . . . . . . . . ▶ | 37 | 0 00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Credits** (See Instructions on page 13) | 38 | Credit for contributions to candidates for public office . . . | 38 | 0 00 | | |
| | 39 | Credit for the elderly (attach Schedules R&RP) . . . . . | 39 | 0 00 | | |
| | 40 | Credit for child and dependent care expenses (attach Form 2441) . . . | 40 | 0 00 | | |
| | 41 | Investment credit (attach Form 3468) . . . . . . . . . . | 41 | 0 00 | | |
| | 42 | Foreign tax credit (attach Form 1116) . . . . . . . . . . | 42 | 0 00 | | |
| | 43 | Work incentive (WIN) credit (attach Form 4874) . . . . . | 43 | 0 00 | | |
| | 44 | Jobs credit (attach Form 5884) . . . . . . . . . . . . | 44 | 0 00 | | |
| | 45 | Residential energy credit (attach Form 5695) . . . . . . | 45 | 0 00 | | |
| | 46 | Total credits. Add lines 38 through 45 . . . . . . . . . . . . . . . | | | 46 | 0 00 |
| | 47 | Balance. Subtract line 46 from line 37 and enter difference (but not less than zero) . ▶ | | | 47 | 0 00 |

| | | | | |
|---|---|---|---|---|
| **Other Taxes** (Including Advance EIC Payments) | 48 | Self-employment tax (attach Schedule SE) . . . . . . . . . . . . . . . | 48 | 0 00 |
| | 49a | Minimum tax. Attach Form 4625 and check here ▶ ☐ . . . . . . . . . . | 49a | 0 00 |
| | 49b | Alternative minimum tax. Attach Form 6251 and check here ▶ ☐ . . . . . | 49b | 0 00 |
| | 50 | Tax from recomputing prior-year investment credit (attach Form 4255) . . . . . . | 50 | 0 00 |
| | 51a | Social security (FICA) tax on tip income not reported to employer (attach Form 4137) . . | 51a | 0 00 |
| | 51b | Uncollected employee FICA and RRTA tax on tips (from Form W–2) . . . . . . | 51b | 0 00 |
| 06 | 52 | Tax on an IRA (attach Form 5329) . . . . . . . . . . . . . . . . . | 52 | 0 00 |
| | 53 | Advance earned income credit (EIC) payments received (from Form W–2) . . . . . . | 53 | 0 00 |
| | 54 | Total tax. Add lines 47 through 53 . . . . . . . . . . . . . . . . ▶ | 54 | 0 00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Payments** Attach Forms W–2, W–2G, and W–2P to front. | 55 | Total Federal income tax withheld . . . . . . . . . . . | 55 | 1,770 75 | | |
| | 56 | 1981 estimated tax payments and amount applied from 1980 return . | 56 | 0 00 | | |
| | 57 | Earned income credit. If line 32a is under $10,000, see page 15 of Instructions . . . . . . . . . . . . . . . | 57 | 0 00 | | |
| | 58 | Amount paid with Form 4868 . . . . . . . . . . . . . | 58 | 0 00 | | |
| | 59 | Excess FICA and RRTA tax withheld (two or more employers) | 59 | 0 00 | | |
| | 60 | Credit for Federal tax on special fuels and oils (attach Form 4136 or 4136–T) . . . . . . . . . . . . . . | 60 | 0 00 | | |
| | 61 | Regulated Investment Company credit (attach Form 2439) | 61 | 0 00 | | |
| | 62 | Total. Add lines 55 through 61 . . . . . . . . . . . . . . . . . ▶ | | | 62 | 1,770 75 |

| | | | | |
|---|---|---|---|---|
| **Refund or Balance Due** | 63 | If line 62 is larger than line 54, enter amount OVERPAID . . . . . . . . . . . ▶ | 63 | 1,770 75 |
| | 64 | Amount of line 63 to be REFUNDED TO YOU . . . . . . . . . . . . . . . ▶ | 64 | $1,770 75 |
| | 65 | Amount of line 63 to be applied to your 1982 estimated tax . . . ▶ | 65 | 0 00 |
| | 66 | If line 54 is larger than line 62, enter BALANCE DUE. Attach check or money order for full amount payable to "Internal Revenue Service." Write your social security number and "1981 Form 1040" on it. ▶ (Check ▶ ☐ if Form 2210 (2210F) is attached. See page 16 of Instructions.) ▶ $ | 66 | — — |

**Please Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ *Robert V. Beard*   2-22-82
Your signature        Date       Spouse's signature (if filing jointly, BOTH must sign even if only one had income)

| | | | | |
|---|---|---|---|---|
| **Paid Preparer's Use Only** | Preparer's signature ▶ | | Date | Check if self-employed ▶ ☐ | Preparer's social security no. |
| | Firm's name (or yours, if self-employed) and address ▶ | | | E.I. No. ▶ |
| | | | | ZIP code ▶ |

☆U.S. GOVERNMENT PRINTING OFFICE: 1981-343-249 E.I. 43-0787287

*FORM—NON-TAXABLE RECEIPTS*: *Eisner v. Macomber*, 252 U.S. 189 (1920)

This Form is supplied by the individual taxpayer, who after studying the tax laws (Title 26, U.S.C.) and Supreme Court decisions, in particular the Supreme Court case of *Eisner v. Macomber*, 252 U.S. 189 (1920), realizes that certain earnings, or more generally certain receipts, are *not taxable*. After a thorough analysis of this landmark case, when viewed in light of the tax law sections cited below, the individual taxpayer using this Form now puts the processor and/or examiner of this Form—1040 tax return for 19<u>81</u> on notice that what is claimed must be followed and that the return must be processed as filed. The compulsion to follow the return flows from three factors: (1) the tax code sections cited and used to determine any tax liability are law and must be followed and enforced as such, (2) this ruling is a Supreme Court ruling which is therefore part of the United States Constitution and thus part of the Supreme Law of the Land, and (3) the Internal Revenue Service, by it own admission through the Tax Courts(quasi-judical courts), states that the I.R.S. is only bound to follow the U.S. Constitution and Supreme Court decisions. Since this Supreme Court ruling has never been changed by subsequent decisions, the ruling remains good "law" and hence the processor/examiner is thereby compelled to follow it and process the return as filed.

Looking to the specifics of this case, the processor/examiner is hereby notified that to be better prepared to perform his/her job he/she should have a full understanding of what the Supreme Court said and the implications following therefrom. Although the case deals with the taxability of a stock dividend issued to the taxpayer and the Court held that such a dividend was *not* taxable as *income*, the Court laid down in its opinion rulings that have a far more reaching effect than to just situations dealing with stock dividends. Mr. Justice Pitney recognized the importance of the Supreme Court in dealing with questions of interpretation of the taxing power afforded Congress through the Constitution and the 16th Amendment when he stated at page 206,

" A proper regard for its genesis, as well as its very clear language, requires also that this Amendment shall not be extended by loose construction, so as to repeal or modify, except as applied to income, those provisions of the Constitution that require an apportionment according to population for direct taxes upon property, real and personal. This limitation still has an appropriate and important . function, and is not to be overridden by Congress or disregarded by the courts.

In order, therefore, that the clauses cited from Article I of the Constitution may have proper force and effect, save only as modified by the Amendment, and that the latter also may have proper effect, it becomes essential to distinguish between what is and what is not "income", as the term is there used; and to apply the distinction, as cases arise, according to truth and substance, without regard to form. Congress cannot by any definition it may adopt conclude the matter, since it cannot by legislation alter the Constitution, form which alone it derives its power to legislate, and within whose limitations alone that power can be lawfully exercised."

So the next question to be answered is what did the Court say is *income*?

Income is defined very succinctly by the Court in its definition which had been formulated in earlier cases, and was stated at this time at page 207,
"Income may be defined as the gain derived from capital from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets..."
And the Court elaborated on this definition when applied to a stock dividend further on in its opinion by emphasizing the necessity for the severance of the gain from the investment, in order for the gain to be taxed as income.

So what the Supreme Court defines as *income* is what is to be applied when assessing a taxpayer's tax liability, and not what the Congress may say income is or what is to be used as the yardstick is such situations, if such definitions conflict with Supreme Court rulings. In pointing out to the processor/examiner that although the Internal Revenue Code of 1954, 26 U.S.C. § 61 *attempts* to define what is GROSS INCOME and later what is TAXABLE INCOME, Congress is precluded from doing so by this case ruling. But the tax laws *do* provide for the proper determination of income (gain) from wages, which when used properly do not conflict with the holding of *Eisner*, supra.

Looking to the Internal Revenue Code of 1954, Title 26, U.S.C., the rule for the determination of gain (income) from the sale or other disposition of property (of which the exchange of labor for wages is an instance) is found in sections 1001(a), 1001(b), 1011(a), and 1012.
> 26 U.S.C. 1001(a): "the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis."
> 26 U.S.C. 1011(a): "the adjusted basis...shall be the basis (determined under section 1012)".
> 26 U.S.C. 1012: "The basis of property shall be the cost of such property..."
In summary, the gain from the exchange of labor for wages is the excess of the amount of wages realized therefrom over the cost of labor. Section 1001(b) defines "amount realized" as "the sum of money received plus the fair market value of the property (other than money) received." This section recognizes that in the determination of a potential gain, the amount received can be determined either in the form of money or in the fair market value of property other than money. The employee gets his amount realized in money, while the employer, in labor which has a fair market value determined by contract and accepted by government to be the value of wages. It is thus clear that it is the value of the amount received and not its form that is used to determine gain (income). The law permits my employer to use this standard of "value" to declare that the value of my labor is equal to his costs in the form of money (or wages) lost to him, and which he has a right to renew before he receives an excess of that cost, that is, a gain or income. I, as an individual, require that this same standard of "value" allow me to declare that the value of his wages paid to me is equal to my costs or losses in the form of valuable labor (time lost forever and skilled energy lost until renewed by the requirements of rest and food, etc. through wages).

Therefore, according to section 1001(a), if the law is evenly applied, there would be zero (0) excess of amount realized over the cost of my labor, since the cost of my labor is its fair market value, which is identical to the amount received in wages.

The individual using this Form would also like to warn the processor/ examiner not to fall into the same mistake as the Government did in *Eisner*, supra at page 213,

"Throughout the argument of the Government, in a variety of forms, runs the fundamental error already mentioned—a failure to appraise correctly the force of the term "income" as used in the Sixteenth Amendment, or at least to give practical effect to it."

Other court decisions which may be helpful in clarifying the position held by the individual using this Form are as follows. In *Conner v. U.S.*, 303 F.2d 202 (1969), the court stated "Whatever may constitute income, therefore, must have the essential feature of gain to the recipient. This was true when the Sixteenth Amendment became effective, it was true at the time of the decision of *Eisner v. Macomber*, supra, it was true under section 22(a) of the Internal Revenue Code of 1954. If there is no gain, there is no income". From *Champlin v. C.I.R.*, 123 F.2d 202 (1941) it is stated "Where property is given in exchange for other property, the cost of the property acquired is the value of the property given exchanged therefore". Hence, the values of labor and wages are equivalent. "The moral requirement implicit in every contract of employment, viz, that the amount paid and the service rendered shall bear to each other some measure of just equivalence... In principle, there can be no difference between the case of selling labor and the case of selling goods (property)." *Adkins v. Childrens Hospital*, 261 U.S. 525 (1923).

Thus a proper appraisal must be made on an individual to individual basis in assessing taxes. Therefore the individual comes to the inescapable conclusion that this Form, NON-TAXABLE RECEIPTS, when viewed in light of the tax law sections cited and *Eisner v. Macomber*, supra, is proper and binding on the tax processor and/or examiner. The following computations were used and the figures transferred to the Form-1040 in arriving at the proper tax to be payed.

COMPUTATION OF NON-TAXABLE RECEIPTS SECTION:

1.  Total receipts (taken from line 21, Form-1040).................... 24,401/89

2.  Wages, salaries, tips, etc. ............................... 24,401/89

3.  Other receipts which *do not* meet *Eisner* test .... 0/00

4.  Total Non-taxable receipts (add lines 2 & 3)...... 24,401/89

    transfer this amount to line 23, Form-1040

5.  Adjusted Gross Income (subtract line 4 from line 1)............. 0/00

    transfer to line 31, Form-1040 only if *no* other Adjustments to Receipts

Under penalties of perjury, I declare that I have examined this Form and to the best of my knowledge and belief, it is true, correct, and complete.

(S) Robert D. Beard_____, Date ___2-22-82_____

*FORM–NON-TAXABLE RECEIPTS*